THE BALTIMORE CITY PASSENGER RAILWAY COMPANY *vs.* CHARLES E. KEMP and ADALINE KEMP, his Wife.

*Action by Husband and Wife for Injury to Wife—Negligence by Railroad—Instruction—Measure of Damages—Cancer produced by Injury to Wife.*

In an action by husband and wife against a railroad company to recover for personal injuries, sustained by the wife, through the alleged negligence of the defendant, the jury were instructed, that in estimating the damages they were to consider the health and condition of the female plaintiff before the injury, as compared with her condition at the time of the trial, *in consequence* of the injury; "and whether the injury in its nature was permanent, and how far it was calculated to disable her from engaging in those household pursuits and employments for which, in the absence of such injury, she would be qualified; and also the physical and mental suffering to which she was subjected by reason of the injury; and to allow such damages as in the opinion of the jury would be a fair and just compensation for the injury *which she sustained.*" On appeal it was HELD:

That the instruction, in terms, confined the damages to be awarded, to compensation for the personal injury sustained by the wife; and there was nothing embraced in it for which the husband could have sued alone.

Baltimore City Pass. Railway Co. *vs.* Kemp and Wife.

The female plaintiff having testified that shortly after the injury complained of, a cancer was developed at the place on her person where she was injured, and medical testimony having been offered on both sides of the question, whether the cancer was the result of the injury, it was HELD:

1st. That it was for the jury to determine as a matter of fact, whether the cancer did result from the injury received. And in determining this question they were required to consider all the circumstances and coincidences of the case in connection with the testimony of the professional witnesses.

2nd. That if the jury believed from all the evidence before them that the cancer was the natural and proximate consequence of the blow received, by the negligent act of the defendant, it would properly form an element to be considered in awarding damages for the pain and injury suffered by the female plaintiff.

3rd. That the fact that she may have had a tendency or predisposition to cancer, could afford no proper ground of objection to her claim.

The case of *Hobbs and Wife* vs. *The London and South-western R. Co.*, *L. R.*, 10 *Q. B.* 111, distinguished from this case, without intimating that this Court would accept that decision as an authority in any case.

APPEAL from the Circuit Court for Howard County.

The case is stated in the opinion of the Court.

*Exception.*—At the trial the plaintiffs offered the following prayer:

That if the jury shall find a verdict for the plaintiffs, in estimating the damages, they are to consider the health and condition of the plaintiff, Adaline Kemp, before the injury complained of, as compared with her present condition, in consequence of said injury, and whether the said injury is in its nature permanent, and how far it is calculated to disable her from engaging in those household pursuits and employments for which, in the absence of such injury, she would be qualified, and also the physical

and mental suffering to which she was subjected by reason of the said injury, and to allow such damages as in the opinion of the jury will be a fair and just compensation for the injury which she has sustained.

And the defendant offered the two following prayers :

1. That if the jury shall find from the evidence, that the plaintiff, Mrs. Kemp, on the occasion testified to by her, got up from her seat while the car was in motion, and went out to the platform after the car had passed the stopping place at the corner of Hoffman street and Madison avenue, while the car was still in motion, in order to get off from the car, and that the conductor, seeing this action on her part, pulled the bell to stop the car, and that by the motion, a jar of the car in being stopped, the said plaintiff was thrown against some part of the car while on the platform, or in attempting to get off, then the plaintiff cannot recover in this action.

2. That there is no legally sufficient evidence that the cancer testified to by the witnesses in this case, was caused by the negligence of the defendant or its servants, and therefore the jury cannot take the same into consideration in estimating the damage done to the plaintiff, Mrs. Kemp, by the negligence of the defendant, or its servants, even if they shall find that there was such negligence.

The defendant's first prayer was conceded, and the Court (MILLER, J.,) granted the plaintiff's prayer, and rejected the second prayer of the defendant. The defendant excepted. The jury rendered a verdict for $10,000 in favor of the plaintiff, and judgment was entered for the amount. The defendant appealed.

The cause was argued before ALVEY, C. J., STONE, IRVING, and RITCHIE, J.

*Bernard Carter*, and *A. W. Machen*, for the appellant.

*John S. Tyson*, and *Henry E. Wootton*, for the appellees.

Baltimore City Pass. Railway Co. *vs.* Kemp and Wife.

ALVEY, C.·J., delivered the opinion of the Court.

This is an action brought by husband and wife to recover for personal injuries suffered by the wife, caused, as it is alleged, by the negligent wrong of the defendants.

The trial below resulted in a verdict and judgment for the plaintiffs; and the defendants have appealed for alleged errors in granting a prayer on the part of the plaintiffs, and refusing a prayer on the part of the defendants.

1. It is objected by the defendants, that the instruction granted at the instance of the plaintiffs, includes and authorized the jury to find for a cause of action that should have been sued for by the husband alone, without the joinder of the wife. We do not so read the instruction. It simply directed the jury that, in estimating the damages, they were to consider the health and condition of the female plaintiff before the injury complained of, as compared with her condition at the time of the trial, *in consequence* of the injury; "and whether the injury in its nature was permanent, and how far it was calculated to disable her from engaging in those household pursuits and employments, for which, in the absence of such injury she would be qualified; and also the physical and mental suffering to which she was subjected, by reason of the injury; and to allow such damages as in the opinion of the jury would be a fair and just compensation for the injury *which she sustained.*"

Now, according to the common law upon this subject, it is perfectly well settled, that in an action brought for personal injuries suffered by the wife, the husband and wife must join, and the declaration must conclude to their damage. But in such action care should be taken that there be not included any cause of action for which the husband should sue alone; as, for instance, for loss of services, expenses incurred, and the like. *Dengate and Wife vs. Gardiner,* 4 *M. & W.* 6; *Stoop and Wife vs. Swarts,*

12 *Sergt. & R.*, 76; 1 *Chitt. Pl.* 82, 83.   In the instruction before us reference is made to the disability of the wife to perform household duties, but that was only by way of contrasting her former with her present condition of health.   The jury were not directed or authorized, in estimating the damages, to allow for the loss of services of the wife while suffering under the disability occasioned by the injury.   The instruction, in terms, confined the damages to be awarded to compensation for the personal injury sustained by the wife ; and there was nothing embraced for which the husband could have sued alone.   The action was brought before the passage of the Act of 1882, ch. 265, which provides "that any married woman may sue in any Court of law or equity in this State, upon any cause of action, in her own name, and without the necessity of a *prochein ami*, as if she were *féme sole;*" and therefore it is unnecessary to consider whether that Act extends to a case like the present.

2. The second prayer offered by the defendants, and which was 'refused by the Court, asked that the jury be instructed that there was *no legally sufficient evidence* that the cancer, testified to by the witnesses, *was caused* by the negligence of the defendants, and therefore they should not take the cancer into consideration in estimating any damages that they might award to the female plaintiff.   And upon this prayer for instruction, the defendants contend, 1st. That there was no evidence, *legally sufficient* to be considered by the jury, that the cancer of which Mrs. Kemp suffered was the natural result or consequence of the negligence complained of; and, 2ndly, that if there was in fact, any causal connection between the immediate injury received by Mrs. Kemp and the subsequent development of the cancer, the latter, to be treated as a legal effect, was too obscure, and too remote from the alleged cause, to form an element of damage for the original wrongful act.

Baltimore City Pass. Railway Co. *vs.* Kemp and Wife.

We shall not recite in detail all the evidence upon the subject. Suffice it to state, that the evidence shows clearly and without contradiction, that Mrs. Kemp was, at the time of the accident, and for many years prior thereto, apparently in good health and condition. The accident occurred about the middle of May, 1880, and a very short time thereafter the cancer commenced its development on the injured part of her person. In her testimony, after describing the manner in which the accident occurred, and how she was thrown against the railing on the platform of the car, as she was about getting off, and the hurting of her right arm and left breast, she states that the right arm was bruised and discolored ; and "where the breast was struck it was sore, and remained so from that time out. Prior to that time she had no pain or soreness ; and two or three weeks afterward, a small lump appeared in the left breast," which, upon being shown to her physicians, was pronounced to be a cancer. Dr. Smith first operated for its removal on the 8th of November, 1880, when it was about the size of an orange, and he operated again about the 12th of January, 1881, when the entire breast was removed, but without success in extirpating the roots of the disease. The cancer still remains, and is pronounced to be incurable. The two daughters of Mrs. Kemp, in their testimony, fully corroborate the statement of their mother, in regard to her previous good health and apparent freedom from disease, and the subsequent appearance and growth of the cancer. And the professional witnesses, while they all testify that it is impossible to know and be certain as to the origin of cancer in any given case, yet they all agree in saying that the blow, such as that described by Mrs. Kemp, was sufficient and may have been the cause of the development of the cancer in her case. In the opinion of two of the physicians, Dr. Latimer and Dr. Turner, the blow on the breast, as described by Mrs. Kemp, was not only sufficient cause for the production of the cancer, but that

they would attribute the cancer to that cause.    And from the coincidences of the case we must say that their opinion does not appear to be unreasonable.

Now, with this evidence in the case, unless the Court could have been required to hold, as matter of law, that the production of cancer was too uncertain and too remote a consequence of the alleged injury to be allowed to be considered in estimating the damages, upon what principle could the Court properly withhold the matter from the jury, upon the prayer offered by the defendants? It was for the jury to determine, as matter of fact, whether the cancer did result from the injury received.    And in determining this question they were required to consider all the circumstances and coincidences of the case, in connection with the testimony given by the professional witnesses.    If therefore the subject was proper to be considered by the jury at all, we are clearly of opinion that there was evidence sufficient to be considered by them.

Now, the question is, whether the production of cancer, as the result of an injury received by the negligence of the defendants, under the circumstances of this case, be too remote a consequence from such negligence, to form an element of damage to the plaintiff.    If it be not, then, clearly, the Court below committed no error in refusing the second prayer of the defendants.

It is not simply because the relation of cause and effect may be somewhat involved in obscurity, and therefore difficult to trace, that the principle obtains, that only the natural and proximate results of a wrongful act are to be regarded.    It is only where there may be a more direct and immediate sufficient cause of the effect complained of, that the more remote cause will not be charged with the effect.    If a given result can be directly traced to a particular cause, as the natural and proximate effect, why should not such effect be regarded by the law, even though such cause may not always, and under all condition of things, produce like

results? It is the common observation of all, that the effects of personal physical injuries depend much upon the peculiar conditions and tendencies of the persons injured; and what may produce but slight and comparatively uninjurious consequences in one case, may produce consequences of the most serious and distressing character in another. And this being so, a wrong-doer is not permitted to relieve himself from responsibility for the consequences of his act, by showing that the injury would have been of less severity if it had been inflicted upon anyone else of a large majority of the human family. Hence the general rule is, that, in actions of tort like the present, the wrong-doer is liable for all the direct injury resulting from his wrongful act, and that too although the extent or special nature of the resulting injury could not, with certainty, have been foreseen or contemplated as the probable result of the act done. 3 *Suth. on Dam.*, 714, 715, and the cases there cited. The general rule is stated by *Addison*, in his work on *Torts*, (3*rd Ed.*) *page* 5, with as much clearness and precision as will be found in any other text writer, and he states the rule to be, "that whoever does an illegal act is answerable for all the consequences that ensue in the ordinary and natural course of events, though those consequences be immediately and directly brought about by the intervening agency of others, provided the intervening agents were *set in motion* by the primary wrong-doer, or provided their acts causing the damage were the necessary or legal and natural consequence of the original wrongful act." If, therefore, the jury believed from all the evidence before them, that the cancer in the breast of Mrs. Kemp was the natural and proximate consequence of the blow received on her breast, by the negligent act of the defendants, it would properly form an element to be considered in awarding damages for the pain and injury suffered by her.

82          MARYLAND REPORTS.

Baltimore City Pass. Railway Co. *vs.* Kemp and Wife.

If by the blow received a severe contusion had been produced, resulting in an ordinary tumor or open ulcer, we suppose no question would have been raised as to the right of the plaintiff to show such results of the injury received, as indicating the extent of the injury and the degree of suffering endured. Why should a different rule be applied to this case? That the female plaintiff may have had a tendency or predisposition to cancer, can afford no proper ground of objection. She in common with all other people of the community had a right to travel or be carried in the cars of the defendants, and she had a right to enjoy that privilege without incurring the peril of receiving a wrongful injury that might result in inflaming and developing the dormant germs of a fatal disease. It is not for the defendants to say that because they did not, or could not in fact, anticipate such a result of their negligent act, they must therefore be exonerated from liability for such consequences as ensued. They must be taken to know, and to contemplate, all the natural and proximate consequences, not only that certainly would, but that probably might flow from their wrongful act. The defendants must be supposed to know that it was the right of all classes and conditions of people, whether diseased or otherwise, to be carried in their cars, and it must also be supposed that they knew that a personal injury inflicted upon any one with predisposition or tendency to cancer, might, and probably would, develop the disease. See case of *Stewart vs. City of Ripon*, 38 *Wis.*, 584.

The defendants have cited and relied upon the case of *Hobbs and Wife vs. The London & South-Western R. Co.*, *L. R.*, 10 *Q. B.*, 111, as maintaining a doctrine different from that just stated by us. But in several respects that case is quite different from this. In the first place, that was an action upon contract, seeking a recovery for a breach thereof. There a passenger, who had been set down with his wife at a wrong station, sought to recover,

from the railway company damages for a cold which his wife had taken in consequence of the exposure in having to walk home in the rain. And it was held, that the loss so occasioned was not so connected with the breach of contract as that the carrier breaking the contract would be liable. As said by the Court, the catching cold by the plaintiff's wife was not the immediate and necessary effect of the breach of contract, or was not such an effect as could fairly be said to have been in the contemplation of the parties. But we suppose, with *Mr. Mayne,* in his work on *Damages, page* 73, (*Wood's Ed.,*) that that case would have been differently decided, if, instead of putting the plaintiff down safely at the wrong place, the company had by their negligence caused any personal injury to him. Without, therefore, intimating that we should accept the decision as an authority in any case, we think it has no direct application to the case before us.

Concurring with the Court below in its rulings excepted to, we must affirm the judgment.

*Judgment affirmed.*

(Decided 20th December, 1883.)

Stone, J., filed the following dissenting opinion :

I am unable to agree with the majority of the Court upon the principal question involved in this case. I think, as a *matter of law,* the plaintiff was not entitled to recover damages for the cancer which she claims was the result of the injury she received on the road of the defendant. In the view that I take of the matter, it makes no difference whether the cancer was the result of the accident or not, but I assume that it was in fact produced by the injury the plaintiff received on the defendant's road.

This was an action brought against a common carrier for *negligence and carelessness,* whereby the passenger was injured. In my opinion, all such actions are founded

on contract, and the damages recoverable are for a breach of the contract, and for that only.

This is not an action for an *intentional or wanton injury.* Such cases stand upon an entirely different footing from the one before us, and in such a case, where the injury is the result of an intentional or wanton act, the rule of damages is and ought to be entirely different.

In the case before the Court, and in all cases where a railroad, or other transportation company, undertakes to carry a passenger for hire from point to point, they undertake to transport him safely, or at least to use *all possible care* to do so. If by the negligence of their employés, he is injured, it is a breach of the contract they made with him, and that only. The measure of the damages is the injury he receives from the breach of the contract to use all possible care to transport him safely. What is the correct measure of damages, is still in many cases a matter of doubt.

It is now well settled, both in England, and in this State, that the liability of a common carrier, who undertakes to carry goods, is the value of the goods at the place of delivery, and nothing more. This is placed upon the ground that it is a contract made by the carrier, that for a certain consideration he will *carry safely* the goods to the point of their destination.

But damages for injuries to the person of a passenger carried, by negligence of the carrier, are not so readily ascertained or measured. Still I think the principle is the same. I think it must be conceded that cancer is a distinct and well known disease, not necessarily or probably connected with, or resulting from, railway accidents. It was known and dreaded probably centuries before the running of the first railway train.

It is not the natural and probable consequence of a railway accident of any sort. If it did result from the injury, the plaintiff received in this case, such a result was

highly improbable, exceptional, and one that could not possibly have been foreseen or contemplated by the company, when they undertook to carry the passenger safely, and could have formed no part of the contract between the company and the passenger.

Since *Baxendale's Case* it has been generally conceded both in England and in this State, that the market value of the goods at the place of delivery, is the measure of the damages for their loss or injury. It is true, that the owner of the goods may sustain a much greater loss than the market value of the goods. The failure to get them, may disarrange and cause serious loss to his business. But such losses, which *may possibly* accrue, form no part of the contract of the carrier. They are too remote and contingent, and form no part of his ordinary contract. He does not undertake to guard against any such *merely possible* contingency. He does not charge for any such risk.

So when the transportation company undertakes to carry a person from place to place, it does guarantee against the natural, probable and ordinary consequences of any negligence or carelessness on its part which causes injury to the passenger. But it does not insure against *every possible* injury, which can be traced back, and had its beginning in the accident. It must be something that the company can foresee, and thus guard against, before it can be held responsible. It cannot examine into the health and condition of the passenger, but must take all, the delicate and sickly, as well as the strong and robust, the diseased as well as the healthy. It is very possible that mere fright at the occurrence of a slight railroad collision, might cause death to a person in the last stage of heart disease, although he might be physically untouched. In such case would the railroad be chargeable with his death?

In the case of *Hobbs vs. London and South Western Railway Company*, 10*th Law Reports, Queen's Bench*, the facts were these :

The plaintiffs bought tickets from Wimbledon to Hampton Court, but it so happened that the train did not go to Hampton Court, but went to Esher Station, which increased the distance the plaintiffs had to go from the railway station to their home, some two or three miles. They were unable to get a conveyance from Esher station to their home, and had to walk. The night being rainy the wife contracted a cold and was laid up for some time, and medical expenses were incurred. At the trial below the jury found a verdict for £8 on account of the inconvenience of the plaintiffs being obliged to walk home, and also £20 for the wife's illness.

In the Court of Queen's Bench the case was tried before Cockburn, C. J., and Blackburn, Mellor, and Archibald, Justices, who unanimously decided that the railway company were not responsible for the illness of the wife.

In delivering his opinion on the question of the liability of the railway company for the illness of the wife, Chief Justice Cockburn, said : "That to entitle a person to damages by reason of a breach of contract, the injury for which compensation is asked should be one that may be fairly taken to have been contemplated by the parties as the possible result of the breach of the contract. Therefore you must have something immediately flowing out of the breach of the contract complained of, something immediately connected with it, and not merely connected with it through a series of causes intervening between the immediate consequence of the breach of contract and the damage or injury complained of. Here, I think, it cannot be said the catching cold by the plaintiff's wife is the immediate and necessary effect of the breach of contract, or was one which could be fairly said to have been in the contemplation of the parties." And further on he says, speaking of the cold taken by the wife : "It is an effect of the breach of contract in a certain sense, but removed one stage ; it is not the primary but the se-

condary consequence of it." And again, "it is not the necessary consequence, it is not even the probable consequence of a person being put down at an improper place, and having to walk home, that he should sustain either personal injury or catch a cold. That cannot be said to be within the contemplation of the parties so as to entitle the plaintiff to recover."

MELLOR, in his opinion, says that the true rule of damage is "such as arises naturally and directly from the breach of contract, or such as both parties might reasonably have expected to result from a breach of the contract."

In *Mayne on Damages, (2nd Edition) page* 27, the general rule is thus laid down: "The first, and in fact the only inquiry, in all these cases is, whether the damage complained of is the natural and reasonable result of the defendant's act; it will assume this character, if it can be shown to be such a consequence, as in the ordinary course of things would flow from the act, or, in cases of contract if it appears to have been contemplated by both parties; when neither of these elements exists the damage is said to be too remote."

In *Indianapolis, Bloom. & W. R. R. Co. vs. Birney,* 71 *Illinois,* 391, the Court says, "Damages produced by other agencies than those causing the injury, or even by agencies remotely connected with those causing the injury, cannot be awarded as proximate or proper compensation, but only where the injury flows from the wrongful act, as its natural concomitant or as the direct result thereof. Where speculation or conjecture has to be resorted to for the purpose of determining whether the injury results from the wrongful act, or from some other, then the rule of law excludes the allowance of damages for such injury."

In the case of *Sheffer vs. Virginia Midland R. R. Co.,* 105 *U. S.,* 249, the facts were these: A passenger was injured by a collision on the railroad, and his injury was so

serious that it resulted in his insanity; while insane he committed suicide, and suit was brought against the railroad for his death. All the facts were spread upon the record, and the case came up on demurrer. The Court refused to hold the company responsible in damages for the death of the passenger, and in their opinion say:

"It must appear that the injury was the natural and probable consequence of the negligence or wrongful act. The suicide of Sheffer was not a result naturally and reasonably to be expected from the injury received on the train. It was not the natural and probable consequence, and could not have been foreseen in the light of the circumstances attending the negligence of the officers in charge of the train. His *insanity* as a cause of his final destruction, was as little the natural, or probable result of the negligence of the railroad officials as his suicide, and each of these are casual or unexpected causes, intervening between the act which injured him, and his death."

Many more cases might be cited, to the same effect. It will appear from the above cases, that the Court of Queen's Bench in England, the Supreme Court of the United States, and the highest Court of one of the States, are in substantial accord upon the subject of the proper rule for the ascertainment of damages. A careful examination of these cases will show that they all proceed upon the theory; first, that the injury to the passenger caused by the *negligence* of the railway company, or its employés, is in reality, a breach of contract, made by the company to transport the passenger safely; secondly, that the injury must be the natural and probable consequence of the accident, or negligence of the company, or its employés, and and not of casual or unexpected causes intervening between.

In this case, the facts are these, according to the theory of the plaintiff: The passenger received a bruise by the negligence of the company's employé, in starting a car while

she was getting off. Some time after, cancer developed on the spot where she received the bruise, and the bruise was the cause of the cancer; but that cancer is not the natural or ordinary consequence of a bruise, but *may be*.

This is the evidence as strongly as it can be stated in behalf of the plaintiff, and does not bring the case within the rule laid down, either by the Queen's Bench or the Supreme Court.

The death of the passenger may, and probably will be caused by the cancer, and thus may be traced back to the accident, and it seems to me that the railroad may as properly be held liable for her death, as for the disease that will likely cause her death.

Whether such a disease as cancer did result from the bruise, must, in the very nature of things, be a mere conjecture. Admitting for the sake of the argument, that it did so result in this particular case, it only can mean that the jury *conjectured rightly.* Into such a wide field as the field of conjecture, I cannot think that a jury should be permitted to wander, and therefore am of opinion that the judgment should be reversed.