STATE, USE OF ARONOFF ET AL. *v.* BALTIMORE TRANSIT CO.

[No. 127, October Term, 1950.]

*Decided April 12, 1951.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*Daniel E. Klein* and *W. Giles Parker* for appellant.

*Hamilton O'Dunne* and *Benjamin C. Howard,* with whom was *Edwin T. Steffy, Jr.,* on the brief, for appellee.

COLLINS, J., delivered the opinion of the Court.

Appellant here appeals from an order of the Superior Court of Baltimore City sustaining a demurrer to its second amended declaration, resulting in a judgment in favor of the appellee for costs of suit.

As this case comes up on demurrer it is necessary that we recite the essential parts of the declaration which follow: "that at the time of the happening of the wrongs and injuries hereinafter complained of, the Defendant, for its own gain and profit, operated a transit company in the City of Baltimore, State of Maryland, * * * that on or about the 24th day of September, 1948, Harry Aronoff, husband of the equitable Plaintiff, Rose

Aronoff, and father of the equitable infant Plaintiff, Mark A. Aronoff, was the founder, president, general manager and stockholder of a plate glass business known as The Southern Plate Glass Co., a Maryland corporation which was owned and controlled in its entirety by the decedent, Harry Aronoff, and his immediate family; and in his capacity as general manager and a substantial owner of said company, said Harry Aronoff was on and about a job of installing large plate glass windows at No. 28 West Lexington Street, Baltimore, Maryland, in an establishment known as The Holly Shop, which job he was supervising and directing, that while the said Harry Aronoff was so acting, and in the exercise of due care and without any fault or negligence whatsoever on his part contributing thereto, and solely due to the negligence, recklessness and carelessness on the part of the said Defendant, its agents and employees, a street car of the Defendant was caused to run into and against the side of a parked truck of The Southern Plate Glass Co., which was properly parked on the north side of Lexington Street headed in a westerly direction, and having in racks thereon a number of large plates of plate glass intended for installation in the windows of the aforesaid The Holly Shop, and especially milled and prepared for that express purpose, all of which were shattered and broken with resulting noise, excitement, and confusion due to said collision; and that at the time of the aforesaid negligent act of the Defendant, the decedent, Harry Aronoff, was standing immediately off the sidewalk inside what is known as the lobby of The Holly Shop, which at that time had no glass in its windows or store front, and that then and there at the time of the occurrence of the collision aforesaid the decedent, Harry Aronoff, was in such position as to immediately perceive the occurrence of the accident and *either saw or heard or both saw and heard the impact, collision, crashing of glass and other immediate and exciting results of the aforesaid collision; and that as a result thereof, and having an existing and essential interest in the incurring*

*damages, the said Harry Aronoff was detrimentally affected, was greatly shocked and frightened, and sustained a severe nervous upset and emotional strain, precipitating a heart attack from which he died* in about an hour thereafter, the cause of his death being officially stated as a coronary thrombosis, and the time of his death officially stated as 5:30 P.M. on September 24, 1948. The time of the collision aforesaid being approximately 4:15 P.M. of the same day, September 24, 1948, and the death occurring in an automobile while en route to The Mercy Hospital; by reason whereof the equitable Plaintiff, Rose Aronoff, the surviving wife of the deceased, has sustained pecuniary losses, including support and services which but for his death he would have continued to render her. And that by reason of the death of the said Harry Aronoff, the equitable infant Plaintiff, Mark A. Aronoff, has sustained pecuniary losses, including support and maintenance which his father rendered to him while living, and which but for his death he would have continued to render him. That all the losses and damages sustained by the equitable Plaintiffs were caused directly by the negligence, misconduct, and wrongful acts and omissions of the Defendant as hereinabove set forth." (Italics supplied).

Appellee in this case admits that under the law of this State it is not necessary in order to recover for nervous affections that there be contemporaneous physical injury and physical impact. *Baltimore & O. R. R. Co. v. Harris,* 121 Md. 254, 88 A. 282; *Patapsco Loan Co. v. Hobbs,* 129 Md. 9, 98 A. 239; *Great Atlantic & Pacific Tea Co. v. Roch,* 160 Md. 189, 153 A. 22; *Geipe, Inc. v. Collett,* 172 Md. 165, 190 A. 836, 109 A. L. R. 887; *Industrial Service v. State, Use of Bryant,* 176 Md. 625, 6 A. 2d 372.

In *Palsgraf v. Long Island R. Company,* 248 N. Y. 339, 162 N. E. 99, 59 A. L. R. 1253, a guard employed by the railroad pushed a passenger, who was carrying a package, to help him board a car. The package covered by newspapers and containing fireworks fell on the rails

and exploded. The shock of the explosion threw down scales at the other end of the platform, many feet away. The scales struck the plaintiff, who sued the railroad company. In that case, Chief Judge Cardozo quoted from Chief Judge McSherry the following in the case of *West Virginia C. & P. R. Co. v. State,* 96 Md. 652, 54 A. 669, 61 L. R. A. 574: "In every instance, before negligence can be predicated of a given act, back of the act must be sought and found a duty to the individual complaining, the observance of which would have averted or avoided the injury." [See also *Birckhead v. Mayor and City Council of Baltimore,* 174 Md. 32, 197 A. 615]. Judge Cardozo in that case said: "The plaintiff, as she stood upon the platform of the station, might claim to be protected against intentional invasion of her bodily security. Such invasion is not charged. She might claim to be protected against unintentional invasion by conduct involving in the thought of reasonable men an unreasonable hazard that such invasion would ensue. These, from the point of view of the law, were the bounds of her immunity, with perhaps some rare exceptions, survivals for the most part of ancient forms of liability, where conduct is held to be at the peril of the actor. * * * Here, by concession, there was nothing in the situation to suggest to the most cautious mind that the parcel wrapped in newspaper would spread wreckage through the station. If the guard had thrown it down knowingly and willfully, he would not have threatened the plaintiff's safety, so far as appearances could warn him. His conduct would not have involved, even then, an unreasonable probability of invasion of her bodily security. Liability can be no greater where the act is inadvertent."

Judge Parke said in the case of *Jackson v. Pennsylvania R. Co.,* 176 Md. 1, at page 5, 3 A. 2d 719, 721, 120 A. L. R. 1068: "In order for a plaintiff to have a right of action in negligence against a defendant there must exist a duty which is owed by the defendant to the plaintiff to observe that care which the law prescribes in the given circumstances, a *breach* by the defendant

of that duty, *damages* and *injury* suffered by the plaintiff as the demonstrable effect of the breach of duty. Negligence is, therefore, the absence of care according to the circumstances. So, an action for negligence involves the certain and definite allegation of the circumstances, and the failure of the defendant to exercise the care which the law required according to these circumstances. If the allegations should be insufficient to show a duty breached which was the efficient cause of the injury, the declaration is bad on demurrer."

Mr. Bohlen, in his Studies in the Law of Torts, says at page 260: "No act can be said to be negligent as to the plaintiff unless the average man in the defendant's position and knowing what he knew or should have known, should have regarded injury to the plaintiff as likely to result if care were not taken. This probability of injury raises the duty of care."

In *Cote v. Litawa*, 96 N. H. 174, 71 A. 2d 792, 793, the defendant while parking his automobile, "heard a rattle and a little girl scream". He picked up the child, Patricia, carried the child upstairs to her mother, Lorraine, who was pregnant. As a result of the shock and fright from this incident, the mother was hospitalized for thirty days and treated for a longer period. In a suit for damages, the court said: She "must show a duty on the part of the defendant to so conduct himself with respect to the child Patricia, as not to subject the mother, Lorraine, to an unreasonable risk of shock or fright, with ensuing physical consequences, upon her learning immediately after its occurrence of injury inflicted by him on her child. In our opinion there is no such right in the plaintiff, and no such duty on the defendant. Such consequences are such an unusual and extraordinary result of the careless operation of an automobile that to recognize such a right and impose such a duty would, in our opinion, place an unreasonable burden upon users of highways."

In *Baltimore City Passenger Railroad Co. v. Kemp*, 61 Md. 74, there was testimony that a woman, shortly

after the injury complained of, developed a cancer of the place on her person where she was injured and medical testimony was offered on both sides of the question, whether the cancer was a result of the injury. It was said in that case 61 Md. at page 81: "The general rule is stated in *Addison on Torts*, 5, with as much clearness and precision as will be found in any other text writer, and he states the rule to be 'that whoever does an illegal act is answerable for all the consequences that ensue in the ordinary and natural course of events, though those consequences be immediately and directly brought about by the intervening agency of others, provided the intervening agents were *set in motion* by the primary wrongdoer, or provided their acts causing the damage were the necessary or legal and natural consequence of the original wrongful act.' ".

In *Green v. T. A. Shoemaker & Co.*, 111 Md. 69, 73 A. 688, 23 L. R. A., N. S., 667, a woman sued to recover for alleged injuries to her person and property, caused by the blasting of rocks by the defendants in the vicinity of her dwelling. The declaration alleged that the rocks hit her house, caused plaster to fall which struck her, whereby her health was greatly damaged and her nervous system disordered. It was said in that case, 111 Md. at page 81, 73 A. at page 692, "It must be conceded that the numerical weight of authority supports the general rule that there can be no recovery for nervous affections unaccompanied by contemporaneous physical injury, but the sounder view, in our opinion, is, that there are exceptions to this rule, and that where the wrongful act complained of is the proximate cause of the injury, within the principles announced in *Kemp's Case, supra,* and where the injury ought, in the light of all the circumstances, to have been contemplated as a natural and probable consequence thereof, the case falls within the exception and should be left to the jury." This is the same doctrine as was followed in the case of *Palsgraf v. Long Island R. R. Company, supra.*

In *Bowman v. Williams*, 164 Md. 397, 165 A. 182, the plaintiff was standing in the dining room of his home, having left his work because of the rain and sleet. His wife was in the kitchen and his two boys were in the basement. Looking out of his dining room window, he saw a large truck, loaded with coal, without chains on its wheels, coming down a steep and icy hill. The truck, driven by servants of the defendant, gathered speed, got out of control, ran across the street over the curb and sidewalk, crashed into the basement, under where the plaintiff was standing and remained embedded in the side of the house. He did not sustain any physical impact. The fright of the plaintiff and his alarm for the safety of his two young sons occasioned by this accident, however, he claimed caused such a shock to his nervous system that he fell to the floor of the dining room immediately after the impact of the truck with the house and was carried into the kitchen in a weak and hysterical condition. Judge Parke said in that case 264 Md. at pages 400 and 401, 165 A. at page 183: "As is succinctly expressed in *Bohlen's Studies* in the *Law of Torts*, 265: '* * * No recovery is allowed for mere fright because fright is not of itself such an injury as must be shown to maintain an action for negligence and * * * where physical injury is shown to have resulted, the plaintiff has proved an injury sufficient to sustain the action, the only question being whether or not the injury is the legal consequence of the negligence which caused the fright.' Id., 266, 270, 280. So the negligent, but not willful, driving of the truck from the public highway through the wall of the house in which the plaintiff lived was the breach of duty which in the user of the highway the masters owed the plaintiff. *Bohlen's Studies* in the *Law of Torts*, 258-264, 285. With respect to the present injury, the primary effect of this wrongful act upon the personality of the plaintiff was the fright it caused him, since his person was untouched, although the possession under his demise was invaded. * * * there is neither reason nor logic to hold, with some of

the cases, that a distinction is to be taken, so that, if a party suffer an injury, as loss of health, of mind, or of life, through fear of safety for self, a recovery may be had for the negligent act of another; but may not recover under similar circumstances, if the fear be of safety for another." This is the same conclusion reached in *Hambrook v. Stokes Bros.*, 1 K. B. 141 (1925). It was further said in *Bowman v. Williams, supra,* 164 Md. at page 402, 165 A. at page 184: "In the matter before the court, the nervous shock or fright sustained by the plaintiff was based on reasonable grounds for apprehension of an injury to the plaintiff and his children, and was one which naturally produced physical deterioration as distinguished from those shocks which primarily work on the moral nature, to the exclusion of actual physical injury. Furthermore, the cause of the fright was the negligent act or omission of the defendants in permitting the truck to get out of control or be driven so as to run into the house of the plaintiff. This was a breach of duty that the defendants owed to the plaintiff. The physical damages which the plaintiff sustained naturally, directly, and reasonably arose from this negligent act or omission, without the intervention of any other cause, and so the causal connection between the injury and the occurrence is established."

In the very recent case of *Mahnke v. Moore*, decided Jan. 12, 1951, 197 Md. 61, 69, 77 A. 2d 923, 926, the plaintiff was less than five years of age. Her father shot her mother in her presence with a shotgun and kept the dead body in the house with himself and the child for six days. He later committed suicide in her presence by shooting himself with a shotgun, thereby causing masses of his blood to lodge upon her face and clothing. She sued the executrix of her father's estate in tort for shock, mental anguish and permanent and nervous and physical injuries which she claimed was the result of her father's acts. This Court, after reviewing the authorities, said: "In 1909, however, this Court adopted the rule that where the wrongful act complained of

is the proximate cause of the injury *and the injury ought to have been contemplated in the light of all the circumstances as a natural and probable cause thereof,* the case should be left to the jury. *Green v. T. A. Shoemaker & Co.,* 111 Md. 69, 81, 73 A. 688, 23 L. R. A. N. S. 667. The law is now established in Maryland, in accordance with the modern trend of the decisions that 'a plaintiff can sustain an action for damages for nervous shock or injury caused without physical impact, by fright arising directly from defendant's negligent act or omission, and resulting in some clearly apparent and substantial physical injury as manifested by an external condition or by symptoms clearly indicative of a resultant pathological, physiological or mental state.' *Bowman v. Williams,* 164 Md. 397, 404, 165 A. 182, 184." (Italics supplied.)

It is pertinent to note that the appellant has referred us to no case, and we have been unable to find any, where the plaintiff was permitted to recover for injuries resulting from fear or shock at the injury to his personal property. Appellant relies strongly on the case of *Comstock v. Wilson,* 257 N. Y. 231, 177 N. E. 431, 76 A. L. R. 676, in which the decedent was a passenger in a car driven by her husband, which was scraped by a passing car and made a grating noise. After the automobile stopped and decedent was standing beside the car, she fainted and fell and fractured her skull and died within a few minutes and a recovery was allowed. The Court, however, said in that case 177 N. E. at page 433: "The defendant should have foreseen that a collision with the car in which plaintiff's testatrix was a passenger would cause injury to the passengers. She did collide with the car through lack of care, and she did cause injury to the plaintiff's testatrix. That injury was not confined to fright. The fright was only a link in the chain of causation between collision and fractured skull. The collision itself, the consequent jar to the passengers in the car, was a battery and an invasion of their legal right.

Their cause of action is complete when they suffered consequent damages."

In fact, all the authorities seem to hold that a plaintiff cannot recover for injuries resulting from fear or shock at the injury to his personal property. In *Buchanan v. Stout*, 123 App. Div. 648, 108 N. Y. S. 38, the plaintiff saw from her window her pet cat mangled by defendant's dog. The court there held that the case did not disclose either wilful or gross negligence on the part of the defendant and said that recovery was limited to the pecuniary loss sustained by the death of the cat. In *Stephens v. Schadler*, 182 Ky. 833, 207 S. W. 704, 707, the plaintiff sued the defendant to recover damages for trespasses committed by defendant's dogs against the plaintiff's sheep, growing tobacco, grass and alfalfa. The court in that case said: "The character of damages sought in the fifth paragraph for the mental distress of plaintiff are not recoverable * * *." In *Owsley v. Fowler*, 104 S. W. 762, 31 Ky. Law Rep. 1154, the plaintiff sued in trespass to recover for injury to her property in the execution of a writ of possession and for plaintiff's injured feelings and mental anguish. The court in that case held that the appellant was not entitled to recover for injured feelings and mental anguish. In *Furlan v. Rayan Photo Works*, 171 Misc. 839, 12 N. Y. S. 2d 921, the plaintiff was not allowed to recover for physical and mental anguish caused by the negligent mutilation of his mother's picture. In *B. F. Goodrich Co. v. Hughes*, 239 Ala. 373, 194 So. 842, the plaintiff sued, among other things, for aggravation of a physical condition due to his natural and nervous reaction caused by a representative of the defendant in repossessing plaintiff's automobile. The Alabama Court said in that case 194 So. at page 847: "But 'as a general rule, the law will not permit the recovery of damages for mental distress, where the tort results in mere injury to property,' but 'where there has been a physical injury to a person, under circumstances warranting the recovery of compensatory damages therefor, mental suffering, which is a natural in-

cident thereto, furnishes one of the elements of recoverable damages.' * * * Nervous reactions naturally are in the same category as those which are mental, as the result of a tort which is merely an injury to property or its possession, as distinguished from one to the person. Unless it is committed under circumstances of insult or contumely, such reactions are not considered by the decisions of this Court as proper elements of damages."

It is said in *Corpus Juris*, Damages, Vol. 17, Sec. 156 (e), page 836; 25 C. J. S., Damages, § 69, page 555: "Under ordinary circumstances there can be no recovery for mental anguish suffered by plaintiff in connection with an injury to his property. (Footnote 82). Where, however, the act occasioning the injury to the property is inspired by fraud, malice or like motives, mental suffering is a proper element of damages. In consonance with these principles it has been held that an injury to property alone will not support a recovery for fright occasioned by such injury." Many cases cited in the footnote bear out this statement and those in which a reason is given, rely on the principle that damages must be limited to the natural and proximate result of the injury.

Under the authorities hereinbefore reviewed both in Maryland and elsewhere the test in this case as to whether the appellant is entitled to recover under the allegations of the declaration is whether the shock, fright, nervous upset and emotional strain, allegedly resulting in the death of the decedent, were "the consequences that ensue in the ordinary and natural course of events" from the collision of this street car and this truck and whether such a result "ought, in the light of all the circumstances, to have been contemplated as a natural and probable consequence thereof." *Baltimore City Passenger R. Co. v. Kemp.* 61 Md. 74, supra.

Under the allegations of this declaration the decedent was standing inside a store with no glass in the window, the store being adjacent to the sidewalk. The street car collided with the truck parked at the curb and shattered

and broke the plate glass in which the decedent had an interest, resulting in noise, excitement and confusion. It does not seem under these circumstances that a shock to the decedent "in the ordinary and natural course of events ought in the light of all the circumstances to have been contemplated as a natural and probable consequence thereof." As was said in *Cote v. Litawa, supra*: "Such consequences are such an unusual and extraordinary result of the careless operation of [a truck] that to recognize such a right and impose such a duty would, in our opinion, place an unreasonable burden upon users of highways." [96 N. H. 174, 71 A. 2d 795.] The allegations being "insufficient to show a duty breached which was the efficient cause of the injury, the declaration is bad on demurrer." *Jackson v. Pennsylvania R. Co., supra* [176 Md. 1, 3 A. 2d 721].

*Judgment affirmed, with costs.*