658 A.2d 675

**Scheller M. DOBBINS et ux.**

v.

**WASHINGTON SUBURBAN SANITARY COMMISSION.**

No. 122, Sept. Term, 1994.

Court of Appeals of Maryland.

May 25, 1995.

Allen J. Katz, Gaithersburg, for appellants.

Laura A. Swisher, Associate Counsel (Nathan J. Greenbaum, Gen. Counsel and Sheila D. Collins, Associate Counsel, all on brief), Laurel, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

MURPHY, Chief Judge.

This tort case concerns a claim for money damages to recover for emotional injuries allegedly sustained solely as a result of negligently inflicted damage to the plaintiffs' residential property.

## I.

Scheller M. Dobbins and Mildred H. Dobbins, husband and wife, filed the complaint in this case in the Circuit Court for Montgomery County after their home was flooded on two occasions as a result of a water main break. They alleged trespass, negligence, and loss of consortium, and sought recovery for property damage and "personal injury."

According to the complaint, on January 16, 1988, a water pipe, which was under the control of Defendant Washington Suburban Sanitary Commission (WSSC), broke; it released a

large amount of water onto the property owned and occupied by the Dobbinses in Gaithersburg, Maryland, and caused their basement to leak. On September 29, 1989, another pipe, also under the control of WSSC, broke, and again released large amounts of water onto the Dobbinses' property and flooded their basement. The Dobbinses alleged that on this occasion "[t]he great quantity of water caused the entire basement floor to heave itself upwards lifting the entire structure above it and causing structural damage to their home."

The Dobbinses maintained that WSSC knew or should have known that their pipes could break and would thereby release large amounts of water onto surrounding property. WSSC was negligent, the Dobbinses alleged, by continuing to use the water pipes "without repairing, replacing, reinforcing or appropriately inspecting the mains and connections."

The Dobbinses claimed that

"as a direct result of the damage caused to the home, the Plaintiff, MILDRED DOBBINS, received severe, painful and permanent injuries to her body as well as severe and protracted shock to her nervous system, all of which have caused her and will continue to cause her great pain and mental anguish."

They alleged that this injury to Ms. Dobbins had caused harm to their marital relationship and therefore they sought damages for loss of consortium. They also claimed damages to their property, which claim has since been settled.

WSSC answered, generally denying liability and asserting various defenses, including failure to state a claim upon which relief could be granted. Later, WSSC filed a motion for summary judgment, submitting with it a portion of the deposition of Mildred Dobbins. In the deposition, Ms. Dobbins made clear that the flooding had not directly injured her in any physical way. She stated that she did not go down into the flooded basement but, rather, "stayed upstairs." Consequently, her "personal injury" claim consists entirely of emotional injuries, which caused some physical problems. She also conceded that WSSC did not damage her house because of any personal animosity toward her.

The Dobbinses, in response to the motion for summary judgment, submitted a letter from Dr. Paul A. Silver, Ms. Dobbins' psychiatrist, in which he documented her emotional problems and stated that Ms. Dobbins' "depression started following the water main breaks in 1988 and it is clear that these were the precipitant for her psychiatric, as well as several medical problems."

After a hearing, Judge S. Michael Pincus denied the motion for summary judgment. He recognized that the proper inquiry was "whether or not [the injury] is the natural and expected result of the tortious conduct." He stated, however, that the trend of the cases was away from a bright-line rule barring recovery for emotional distress resulting from property damage, and toward a case-by-case inquiry into the natural and expected result of the defendant's particular conduct. He, therefore, concluded that the jury should decide whether Ms. Dobbins' emotional damages were the natural and expected result of the defendant's alleged negligence.

The county administrative judge subsequently referred the case to Judge James L. Ryan for a settlement conference. Judge Ryan reconsidered the motion for summary judgment and decided to grant it, stating that he believed "the Plaintiffs have no cause of action against the Defendant." He further stated: "It appears that some emotional problems have developed with the Plaintiff or Plaintiffs, but by law the Plaintiffs' claims for mental anguish and emotional upset and distress cannot be chargeable to the Defendant in this case." Accordingly, on May 2, 1994, Judge Ryan granted WSSC's motion for summary judgment.

The Dobbinses appealed to the Court of Special Appeals. Prior to that court's consideration of the case, we, on our own motion, issued a writ of certiorari to consider the important issues raised in the case.

## II.

Maryland Rule 2–501(e) provides that a court may grant a motion for summary judgment "in favor of or against

the moving party if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law." In considering a motion for summary judgment, the trial court does not determine any disputed facts, but instead rules on the motion as a matter of law. *Baltimore Gas and Electric Co. v. Lane,* 338 Md. 34, 43, 656 A.2d 307 (1995); *Southland Corp. v. Griffith,* 332 Md. 704, 712, 633 A.2d 84 (1993); *Beatty v. Trailmaster Products, Inc.,* 330 Md. 726, 737, 625 A.2d 1005 (1993). The court views the facts, including all inferences, in the light most favorable to the party against whom the court grants the judgment. *Beard v. American Agency,* 314 Md. 235, 246, 550 A.2d 677 (1988); *Kramer v. Bally's Park Place,* 311 Md. 387, 389, 535 A.2d 466 (1988); *Liscombe v. Potomac Edison Co.,* 303 Md. 619, 621–22, 495 A.2d 838 (1985). In reviewing the trial court's decision, therefore, we must determine whether the court was legally correct to grant summary judgment. *E.g., Baltimore Gas, supra,* 338 Md. at 43, 656 A.2d 307; *Southland, supra,* 332 Md. at 712, 633 A.2d 84.

## III.

We have held that a plaintiff ordinarily cannot recover for emotional injury caused by witnessing or learning of negligently inflicted injury to the plaintiff's property. *State v. Baltimore Transit Co.,* 197 Md. 528, 80 A.2d 13 (1951). *See also Zeigler v. F Street Corp.,* 248 Md. 223, 235 A.2d 703 (1967). In *Zeigler,* although we followed this general rule, we nevertheless suggested that the plaintiff might have recovered if she had alleged that "the personal safety of the decedent was put in jeopardy." *Id.* at 226, 235 A.2d 703.[1] In this case, however, the Dobbinses do not allege that Ms. Dobbins' safety was jeopardized. Nor do they allege that she ever feared for her safety. Rather the complaint states that Ms. Dobbins'

---

1. Many of our cases have allowed recovery for emotional injuries when the defendants' conduct put the plaintiffs in fear for their personal

injuries came about "as a direct result of the damage caused to the home."[2]

The Dobbinses, therefore, ask us to reconsider the rule we adopted in *Baltimore Transit, supra,* in light of *Belcher v. T. Rowe Price,* 329 Md. 709, 621 A.2d 872 (1993). They argue that *Belcher* signals a trend toward permitting juries to decide the issue of recovery for emotional injuries, instead of denying recovery as a matter of law. They suggest that recovery for emotional injuries should be limited only by a proximate cause analysis involving a fact-specific inquiry into the foreseeability of the harm. They further contend that *Belcher* somehow precludes WSSC from claiming that Ms. Dobbins' emotional injuries were unforeseeable. WSSC, on the other hand, argues that *Baltimore Transit* controls the resolution of this case, along with the more recent reaffirmation of its holding in *Zeigler* and that the *Belcher* decision does nothing to change that result.

---

safety. For example, in *Belcher v. T. Rowe Price Foundation, Inc.,* 329 Md. 709, 621 A.2d 872 (1993), a workers' compensation case in which we discussed tort law as analogous, we permitted a secretary to recover for emotional distress after a three-ton beam fell through the roof and landed five feet from her desk. Also, in *Green v. T.A. Shoemaker & Co.,* 111 Md. 69, 73 A. 688 (1909), the defendant's negligence caused large rocks to fall on the plaintiff's house, one of which came through the roof, landed on her bed, and broke it. *See also Faya v. Almaraz,* 329 Md. 435, 620 A.2d 327 (1993) (permitting plaintiffs to recover for reasonable fear of contracting AIDS after having been operated on by a surgeon who had AIDS).

**2.** In *Zeigler,* we also stated that when the act causing the injury is "inspired by fraud, malice, or like motives, mental suffering is a proper element of damage." *Zeigler, supra,* 248 Md. at 226, 235 A.2d 703. Neither fraud nor malice on the part of WSSC are issues in this case because the complaint does not contain such allegations. Furthermore, Ms. Dobbins admitted in her deposition that she does not claim that WSSC as an entity had any personal animosity towards her or any reason for personally seeking out her house and damaging it. We further indicated in *Zeigler* that a person may be able to recover for emotional distress that occurred as a result of property damage if "the defendants' acts were calculated to cause such mental distress" or "the defendants had been warned that their acts were causing [the plaintiff] mental distress." *Id.* The Dobbinses have not alleged either of these circumstances.

We have advanced two separate theories under which we have limited recovery for emotional distress. First, motivated by a concern over feigned claims, we adopted the so called "physical impact" rule and later the "physical injury" rule. Under the "physical impact" rule, which we followed in Maryland until our decision in *Green v. Shoemaker*, 111 Md. 69, 73 A. 688 (1909), a plaintiff could not recover for emotional distress unless "there was physical impact upon the plaintiff coincident in time and place with the occasion producing the mental distress." *See Vance v. Vance*, 286 Md. 490, 496–97, 408 A.2d 728 (1979). When we rejected the "physical impact" rule in *Green*, we adopted the "physical injury" rule, which "permitted recovery for negligent infliction of mental distress if a 'physical injury' results from the commission of a tort, regardless of impact." *See Vance, supra*, 286 Md. at 497, 408 A.2d 728. Then, in *Bowman v. Williams*, 164 Md. 397, 165 A. 182 (1933), we said that physical injury could be "manifested by an external condition or by symptoms clearly indicative of a resultant pathological, physiological, or mental state." *Id.* at 404, 165 A. 182. Later, in *Vance, supra*, we stated:

"We think it clear that *Bowman* provides that the requisite 'physical injury' resulting from emotional distress may be proved in one of four ways. It appears that these alternatives were formulated with the overall purpose in mind of requiring objective evidence to guard against feigned claims. The first three categories pertain to manifestations of a physical injury through evidence of an external condition or by symptoms of a pathological or physiological state. Proof of 'physical injury' is also permitted by evidence indicative of a 'mental state,'.... In the context of the *Bowman* rule, therefore, the term 'physical' is not used in its ordinary dictionary sense. Instead, it is used to represent that the injury for which recovery is sought is capable of objective determination."

*Id.* at 500, 408 A.2d 728.

In *Belcher, supra*, we noted that the "physical injury" rule had dispelled "the fear that the right to damages for emotional

distress would open the floodgates to feigned claims." *Id.* at 734, 621 A.2d 872. We further stated: *"Vance* adequately answered the troubling basic policy issues surrounding the definition of the limits of liability for negligently inflicted emotional harm by requiring that such harm be capable of objective determination. Such an objective determination provides reasonable assurance that the claim is not spurious." *Id.* at 735, 621 A.2d 872.

A second and separately viable theory under which we have limited recovery for emotional injuries is based on the rules concerning foreseeability of harm, which courts have used both "in determining the existence of a duty owed to the Plaintiff [and] in resolving the issue of proximate cause." *Henley v. Prince George's County,* 305 Md. 320, 333, 503 A.2d 1333 (1986). We have explained that the foreseeability rules exist "to avoid liability for unreasonably remote consequences." *Id.* at 333, 503 A.2d 1333. Further, we have stated:

> "In applying the test of foreseeability ... it is well to keep in mind that it is simply intended to reflect current societal standards with respect to an acceptable nexus between the negligent act and the ensuing harm, and to avoid the attachment of liability where, in the language of Section 435(2) of the *Restatement (Second) of Torts* (1965), it appears 'highly extraordinary' that the negligent conduct should have brought about the harm."

*Id.* at 334, 503 A.2d 1333.

In this context, we have distinguished the duty inquiry from the proximate cause inquiry. In *Henley, supra,* 305 Md. at 336, 503 A.2d 1333, we said: "Foreseeability as a factor in the determination of the existence of a duty involves a prospective consideration of the facts existing at the time of the negligent conduct. Foreseeability as an element of proximate cause permits a retrospective consideration of the total facts of the occurrence...." *See also Stone v. Chicago Title Ins.,* 330 Md. 329, 338, 624 A.2d 496 (quoting *Henley* ).

We applied the foreseeability analysis in *Baltimore Transit, supra.* In that case, the plaintiff's decedent, Aronoff, was installing large glass windows into a shop in Baltimore. His truck, loaded with plate glass, was parked along the street. As he was working, he saw a street car collide with his truck. The collision shattered the plate glass on the truck and caused much noise, excitement, and confusion. Aronoff "was greatly shocked and frightened, and sustained a severe nervous upset and emotional strain, precipitating a heart attack from which he died in about an hour thereafter...." *Id.* at 531, 80 A.2d 13. After reviewing numerous cases, we determined that

"the test in this case as to whether the appellant is entitled to recover under the allegations of the declaration is whether the shock, fright, nervous upset and emotional strain, allegedly resulting in the death of the decedent, were 'the consequences that ensue in the ordinary and natural course of events' from the collision of this street car and this truck and whether such a result 'ought, in the light of all the circumstances, to have been contemplated as a natural and probable consequence thereof.'"

*Id.* at 539, 80 A.2d 13 (quoting *Baltimore City Passenger R. Co. v. Kemp,* 61 Md. 74, 81 (1883) and *Green, supra,* 111 Md. at 81, 73 A. 688). The first part of this test is retrospective—a question of proximate cause—while the second part is prospective—a question of duty. We held that Aronoff's emotional injury, viewed either way, was highly extraordinary. Specifically, we stated that the injury was "an unusual and extraordinary result" and that it should not "have been contemplated as a natural and probable consequence" of the defendant's negligence. *Id.* at 540, 80 A.2d 13. Thus, we adopted the rule that "[u]nder ordinary circumstances there can be no recovery for mental anguish suffered by plaintiff in connection with an injury to his property." *Id.* at 539, 80 A.2d 13. We later applied the rule in *Zeigler, supra,* 248 Md. at 226, 235 A.2d 703.

It was this rule upon which Judge Ryan based his decision to grant summary judgment. It was not based on the "physical injury" rule or any concern that Ms. Dobbins' emotional

injuries may have been feigned. He seemed to accept the fact that Ms. Dobbins had developed "some emotional problems," in light of the letter from her psychiatrist that provided objective evidence of her emotional injuries. Yet, the court stated that "by law the Plaintiffs' claims for mental anguish and emotional upset and distress *cannot be chargeable to the Defendant* in this case." (Emphasis added).

The Dobbinses now invite us to abandon the rule in light of *Belcher, supra*, pointing to the following paragraph:

"We have traced the development of the law of Maryland as interpreted in our judicial opinions concerned with liability for negligently inflicted mental harm, from a standard limiting such liability to purely physical trauma to a standard permitting recovery for damages for trauma resulting from purely emotional distress that can be objectively determined. The recognition that a person should be compensated for mental harm resulting from the negligent act of another is in accord with the ever increasing knowledge in the specialties which have evolved in the field of medicine and in the disciplines of psychiatry and psychology. Persons suffering from severe mental distress are no longer simply warehoused in Bedlam type institutions; they are treated by medical experts at no small cost. We are now aware that mental injuries can be as real as broken bones and may result in even greater disabilities."

*Id.* at 735–36, 621 A.2d 872. Clearly, however, these comments referred only to the trend toward liberalizing the "physical injury" rule. We did not in any way signal a relaxation of the foreseeability rules relating to duty and proximate cause, which formed the basis of the *Baltimore Transit* rule. Indeed, we reaffirm the conclusions reached in *Baltimore Transit* that (1) ordinarily, emotional injuries are not the "consequences that ensue in the ordinary and natural course of events" from negligently inflicted property damage and (2) such injuries should not be contemplated, in light of all the circumstances, "as a natural and probable consequence" of

a negligently inflicted injury to property.[3] *Baltimore Transit, supra,* 197 Md. at 539, 80 A.2d 13. Consequently, it remains the law of Maryland that a plaintiff cannot ordinarily recover for emotional injuries sustained solely as a result of negligently inflicted damage to the plaintiff's property.[4] We thus hold that summary judgment was properly entered and that WSSC is not liable for the emotional injuries sustained by Ms. Dobbins, nor for the accompanying claim for loss of consortium.

*JUDGMENT AFFIRMED, WITH COSTS.*

---

3. As we explained above, the first of these conclusions causes us to decide that property damage is not the proximate cause of emotional injury, while the second conclusion prompts us to rule that a defendant has no duty to prevent emotional injuries flowing from property damage.

4. As we have explained, this rule does not apply to emotional injuries caused by a plaintiff's reasonable fear for personal safety. Consequently, in the context of emotional injuries, the foreseeable harm concept is closely related to, but distinct from, the foreseeable plaintiff concept. Because many plaintiffs who have suffered emotional distress from an incident were never actually in physical danger or in fear for their safety, courts have often denied recovery for emotional distress using an unforeseeable plaintiff analysis. *E.g., Resavage v. Davies,* 199 Md. 479, 86 A.2d 879 (1952). The concept has its roots in *Palsgraf v. Long Island R. Company,* 248 N.Y. 339, 162 N.E. 99 (1928). *See also* W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 43, at 284 (5th ed. 1984) (*"[Palsgraf]* involved what may be called, instead of unforeseeable consequences, the unforeseeable plaintiff."). In the case, the New York Court of Appeals created a zone-of-danger test, under which a plaintiff owed a duty only to those plaintiffs who were within the zone of foreseeable danger. *See Palsgraf,* 162 N.E. at 100 ("[T]he orbit of the danger as disclosed to the eye of reasonable vigilance would be the orbit of the duty."). Maryland has adopted this foreseeable plaintiff rule. *See, e.g., Owens v. Simon,* 245 Md. 404, 409, 226 A.2d 548 (1967) ("We do not believe that Officer Ernest was a foreseeable plaintiff...."); *Henley, supra,* 305 Md. at 334–36, 503 A.2d 1333 (discussing the concept of foreseeable plaintiffs and explaining that a defendant may owe a duty to "those within a foreseeable zone of danger" even if their identities are not known in advance). We need not apply the rule in this case, however, because we have held that Ms. Dobbins' *injuries* were unforeseeable.