**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 13-1031

JOSEPH ANTONIO; BULAN JULES-ANTONIO; MICHAEL CLARK; CAROLYN
CLARK; THOMAS COOPER; ANGEL FOUNTAIN-COOPER; GREG GIBBS;
NATALIE GIBBS; GEORGE HALEY; YVONNE HALEY; JACQUE
HIGHTOWER; DAWN HIGHTOWER; KHARI JACKSON; BELINDA JACKSON;
HAROLD JEWETT; CYNTHIA JEWETT; MICHAEL JOHNSON; CRYSTAL
JOHNSON; JAGATH KANKANAMAGE; KETH KANKANAMAGE; KEITH
ROBINSON; TAKEYSHA ROBINSON; EVERTON ROWE; BEVERLY ROWE;
ERIK SMITH; SHARON SMITH; LEONARD SWOOPES; EVORA SWOOPES;
KENDALL WALKER; SAMANTHA WALKER,

Plaintiffs - Appellants,

and

DERRICK POTTS; TERRI ROOKARD,

Plaintiffs.

v.

SSA SECURITY, INC., d/b/a Security Services of America,

Defendant – Appellee,

and

JEREMY DANIEL PARADY; PATRICK STEPHEN WALSH; MICHAEL
MCINTOSH EVERHART; ROY THOMAS MCCANN; SECURITY SERVICES OF
AMERICA, LLC; ABM INDUSTRIES, INC.; AARON LEE SPEED,

Defendants.

Appeal from the United States District Court for the District of
Maryland, at Greenbelt.   Alexander Williams, Jr., District
Judge.  (8:05-cv-02982-AW)

Argued: January 30, 2014          Decided: April 14, 2014

Before KING, WYNN, and FLOYD, Circuit Judges.

Affirmed in part and question certified to the Court of Appeals of Maryland by published order. Judge Floyd directed entry of the order with the concurrence of Judge King and Judge Wynn.

**ARGUED:** Ruthanne Mary Deutsch, AKIN GUMP STRAUSS HAUER & FELD LLP, Washington, D.C., for Appellants. Gary Alvin Bryant, WILLCOX & SAVAGE, PC, Norfolk, Virginia, for Appellee. **ON BRIEF:** Isabelle M. Thabault, Megan Whyte, WASHINGTON LAWYERS COMMITTEE FOR CIVIL RIGHTS AND URBAN AFFAIRS, Washington, D.C.; Steven H. Schulman, Joseph L. Decker, Maka Y. Hutson, AKIN GUMP STRAUSS HAUER & FELD LLP, Washington, D.C., for Appellants. Joseph P. Moriarty, J. David Crain, WILLCOX & SAVAGE, PC, Norfolk, Virginia; Gerry H. Tostanoski, TYDINGS & ROSENBERG, LLP, Baltimore, Maryland, for Appellee.

———————————

ORDER

———————————

FLOYD, Circuit Judge:

This case arises out of one of the largest residential arsons in Maryland history. See Michael E. Ruane & Joshua Partlow, No Motive Found in Charles Arsons; Eco-Terrorism, Racism Considered, Wash. Post, Dec. 8, 2004, at B1. Appellants (Homebuyers) contracted to purchase homes that were later damaged or destroyed due to the arsons. Following the arsons, the Homebuyers brought suit against a company that provided

2

security services in the neighborhood, Appellee SSA Security, Inc., (SSA) alleging various negligence-based claims and a claim premised on a provision of the Maryland Security Guards Act. The district court granted summary judgment in SSA's favor on these claims. The Homebuyers now appeal, and we affirm in part and certify a question to the Court of Appeals of Maryland regarding the Maryland Security Guards Act provision.

I.

Because this case comes to us as an appeal from grants of summary judgment in favor of SSA, we recite the facts in the light most favorable to the Homebuyers, as the nonmoving party. See United States v. Carolina Transformer Co., 978 F.2d 832, 835 (4th Cir. 1992). The Homebuyers are individuals who contracted to purchase homes in the Hunters Brooke neighborhood in Indian Head, Maryland. SSA provided security services in Hunters Brooke from November 12, 2004, to December 6, 2004, when arsons destroyed many of the homes. SSA employed Aaron Speed and William Fitzpatrick as security guards, and they worked in Hunters Brooke at the time of the arsons. SSA first hired Speed in November 2003 without checking his references. Speed quit in August 2004 after being reprimanded for "careless and aggressive conduct," causing his supervisor to write "not for rehire" on

3

his personnel file. However, in November 2004, SSA rehired Speed.

Speed conspired with four men to burn, damage, and destroy houses in Hunters Brooke to prevent racial minority families from moving to the neighborhood. Speed left his post on December 3, 2004, to stash the fuel he and his co-conspirators used to set the fires. Additionally, while Speed was on duty, he created a map of the neighborhood and determined which houses had racial minority owners. Fitzpatrick was on duty from 6:00 PM to 5:00 AM on December 5 and 6, 2004. According to the Homebuyers, Fitzpatrick left his post before his shift ended, allowing Speed and his co-conspirators to set fire to the homes.

When the arsons occurred, none of the Homebuyers had closed on or taken possession of their homes.[1] Consequently, developers U.S. Home Corporation and Patriot Homes, Inc., (collectively, Developers) owned the properties in question at the time of the arsons. The Homebuyers' agreements with the Developers stated, "All risk of loss or damage to the Property by fire . . . is assumed by Seller until settlement."

---

[1] Two plaintiffs—Terri Rookard and Derrick Potts—had taken possession of their homes prior to the arsons. Their claims against SSA survived summary judgment, Antonio v. Sec. Servs. of Am., LLC, No. 05-cv-2982-AW, 2011 WL 3880425, at *6-7 (D. Md. Aug. 30, 2011), but they settled before trial. Rookard and Potts are not parties to this appeal.

The Homebuyers brought suit against SSA, two of its corporate affiliates, Speed, and his four co-conspirators. In a ten-count Amended Complaint, the Homebuyers alleged that SSA and the individual defendants violated the Fair Housing Act (Count I), the Maryland Fair Housing Act (Count II), 42 U.S.C. § 1982 (Count III), and 42 U.S.C. § 1985(3) (Count IV). They also sought to hold SSA, its corporate affiliates, and the individual defendants liable for tortious interference with contract (Count IX) and intentional infliction of emotional distress (Count X). Against SSA alone, the Homebuyers brought claims for negligent hiring, supervision, and training (Count V); for negligence (Count VI); under the Maryland Security Guards Act, Md. Code Ann., Bus. Occ. & Prof § 19-501 (Count VII); and for breach of contract (Count VIII).

The district court granted SSA and its corporate affiliates' motion for summary judgment on Count I, Count II, Count III, Count IV, Count VIII, Count IX, and Count X. Antonio v. Sec. Servs. of Am., LLC, 701 F. Supp. 2d 749, 783-84 (D. Md. 2010). It also dismissed SSA's corporate affiliates, id. at 760-61, and Speed and his co-conspirators from this action. Although the district court allowed the Homebuyers' negligence-based claims and a portion of their Maryland Security Guards Act claim to remain after its initial grant of summary judgment, id. at 783-84, it ultimately granted summary judgment in SSA's favor

5

on these claims following SSA's renewed motion for summary judgment,[2] Antonio, 2011 WL 3880425, at *3-7.

On appeal, the Homebuyers ask us to reverse the district court's decision to grant summary judgment in SSA's favor as to the Homebuyers' negligence-based claims and their claim stemming from the Maryland Security Guards Act. They also challenge the district court's decision not to certify a question regarding how to interpret the Maryland Security Guards Act provision at issue in this case to the Court of Appeals of Maryland. See Antonio v. Sec. Servs. of Am., LLC, No. AW-05-2982, 2010 WL 2858252, at *9 (D. Md. July 19, 2010). We have jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

We first discuss the Homebuyers' contention that the district court erred in granting SSA's renewed motion for summary judgment on the Homebuyers' negligence-based claims. The

---

[2] When the district court ruled on SSA and its corporate affiliates' motion for summary judgment, it allowed the Homebuyers' Maryland Security Guards Act claim to remain only to the extent that this claim rendered SSA liable for Fitzpatrick's negligence. Antonio, 701 F. Supp. 2d at 770. However, because the district court determined that the Homebuyers could not hold SSA liable for negligence when it considered SSA's renewed motion for summary judgment, Antonio, 2011 WL 3880425, at *3-7, it effectively disposed of this remaining portion of the Maryland Security Guards Act claim.

6

district court reached this conclusion because the Homebuyers did not own the damaged property or reside in the homes in question at the time of the arsons and, therefore, suffered only emotional injuries.[3]  Antonio, 2011 WL 3880425, at *4-5.  We review grants of summary judgment de novo and will affirm only if SSA is entitled to judgment as a matter of law and we discern no genuine disputes of material fact.  See Laber v. Harvey, 438 F.3d 404, 415 (4th Cir. 2006) (en banc).

Although we do not wish to downplay the severity of the emotional harm that the Homebuyers suffered due to the arsons, we recognize that, under Maryland law, "a plaintiff ordinarily cannot recover for emotional injury caused by witnessing or learning of negligently inflicted injury to the plaintiff's property."  Dobbins v. Wash. Suburban Sanitary Comm'n, 658 A.2d 675, 677 (Md. 1995).  The Court of Appeals of Maryland established two exceptions to this general rule in Zeigler v.

---

[3] Maryland recognizes the doctrine of equitable conversion, whereby "when the vendee contracts to buy and the vendor to sell, though legal title has not yet passed, in equity the vendee becomes the owner of the land." DeShields v. Broadwater, 659 A.2d 300, 307 (Md. 1995) (quoting Himmighoefer v. Medallion Indus., Inc., 487 A.2d 282, 286 (Md. 1985)).  Parties may prevent equitable conversion via contract by allocating the risk of loss to the seller, see White v. Simard, 831 A.2d 517, 528 (Md. Ct. Spec. App. 2003), as the Homebuyers and the Developers did in this case.  In light of this contractual provision, the Homebuyers cannot rely on equitable conversion to claim that they are the equitable owners of their homes.

7

F Street Corp., 235 A.2d 703 (Md. 1967). First, a plaintiff may recover for emotional injury if his or her "personal safety . . . was in jeopardy." Id. at 705. The Homebuyers, who were not present in Hunters Brooke on the night of the arsons, do not contend that the arsons endangered their personal safety.[4] This first exception therefore does not apply in this case. Second, "[w]here . . . the act occasioning the injury to the property is inspired by fraud, malice, or like motives, mental suffering is a proper element of damage." Id. The Homebuyers contend that we should allow their negligence-based claims to proceed due to this second Zeigler exception.

We consider whether SSA's behavior triggered the second Zeigler exception before turning to the issue of whether we may utilize the exception if Speed and his co-conspirators acted maliciously. During this discussion, we assume for the sake of argument that "fraud, malice, or like motives," id. (emphasis added), includes gross negligence and that SSA was grossly

---

[4] For this reason, the Homebuyers were not foreseeable plaintiffs in this case, which provides another basis for affirming the district court's decision to grant SSA's renewed motion for summary judgment on the Homebuyers' negligence-based claims. See Dobbins, 658 A.2d at 680 n.4 ("Because many plaintiffs who have suffered emotional distress from an incident were never actually in physical danger or fear for their safety, courts have often denied recovery for emotional distress using an unforeseeable plaintiff analysis. . . . Maryland has adopted this foreseeable plaintiff rule.").

8

negligent in its hiring, training, or supervision of its employees. In Abbott v. Forest Hill State Bank, 483 A.2d 387 (Md. Ct. Spec. App. 1984), the Maryland Court of Special Appeals explained that "[t]o recover [under the second Zeigler exception], the plaintiff must allege either notice of the mental distress on the part of the defendant or that the act was calculated to cause mental distress," id. at 391. The Homebuyers do not allege that SSA's actions were "calculated to cause mental distress." Therefore, to succeed, the Homebuyers must demonstrate that SSA had notice of their mental distress.

Maryland precedent indicates that the required notice must occur contemporaneously with the defendant's actions—a requirement Abbott characterized as "prior notice." 483 A.2d at 392. The circumstances at issue in Zeigler provide a cogent example of the "prior notice" requirement. In that case, the defendants cleared the slope behind the plaintiff's home, causing water and debris to flow onto her property. 235 A.2d at 704-05. According to the plaintiff, her husband became so distraught over the resulting damage to the property that he developed a nervous condition that caused his death. Id. at 705. The court explained that the plaintiff did not "allege that the defendants had been warned that their acts were causing the decedent mental distress," id., although—like SSA—they presumably became aware of his distress later. Accordingly, the

9

court declined to hold the defendants liable for the death.  Id. at 705-06.

The Homebuyers allege that they suffered emotional distress due to SSA's actions, but they have failed to show that SSA had any prior notice of their emotional injuries.  Thus, even if SSA was grossly negligent and such behavior constitutes "malice[] or like motives," id. at 705, the Homebuyers cannot recover based on SSA's actions because there is no evidence that SSA aimed to cause their injuries or had prior notice that its behavior was causing distress.

We turn now to the issue of whether the Homebuyers can hold SSA responsible for their emotional injuries if Speed and his co-conspirators acted with "malice[] or like motives" and endeavored to cause the Homebuyers' mental distress.  Maryland precedent is silent regarding whether courts can render a defendant liable for emotional injuries based on a third party's malice.  Therefore, we—as the district court did, see Antonio, 2011 WL 3880425, at *4-5—look to the rationales underlying the second Zeigler exception to determine whether SSA could be liable in this case.  The Court of Appeals of Maryland laid out those rationales in Dobbins v. Washington Suburban Sanitary Commission.  First, Maryland has limited recovery for emotional distress to prevent "feigned claims."  658 A.2d at 677-78.  In this case, the parties do not dispute that the Homebuyers

10

suffered emotional injuries as a result of the arsons. The first Dobbins rationale therefore does not support barring recovery for emotional harm in this case.

Second, Maryland has "limited recovery for emotional injuries . . . based on the rules concerning foreseeability of harm, which courts have used both 'in determining the existence of a duty owed to the [p]laintiff [and] in resolving the issue of proximate cause.'" Id. at 678 (third alteration in original) (quoting Henley v. Prince George's Cnty., 503 A.2d 1333, 1340 (Md. 1986)). Under Maryland law, injuries are foreseeable when they are "consequences that ensue in the ordinary and natural course of events" following the defendant's action and "ought, in the light of all the circumstances, to have been contemplated as a natural and probable consequence thereof." State ex rel. Aronoff v. Balt. Transit Co., 80 A.2d 13, 15, 18 (Md. 1951) (quoting Balt. City Passenger Ry. Co. v. Kemp, 61 Md. 74 (1883)) (internal quotation marks omitted). The Dobbins court explained that "ordinarily, emotional injuries are not the 'consequences that ensue in the ordinary and natural course of events' from negligently inflicted property damage," and "such injuries should not be contemplated, in light of all the circumstances, 'as a natural and probable consequence' of a negligently inflicted injury to property." 658 A.2d at 679 (quoting Balt. Transit, 80 A.2d at 15). Accordingly, assuming that SSA was

11

negligent, the Homebuyers' emotional injuries were not a foreseeable result of its actions. This rationale underlying the second Zeigler exception therefore counsels in favor of not holding SSA liable for the Homebuyers' injuries, even if Speed and his co-conspirators acted with malice.

We understand that the destruction of one's home is a terrible experience that causes lasting emotional trauma. The fact that the Homebuyers lost their homes due to crimes that may have been racially motivated surely exacerbated their suffering. We also recognize that, if the Homebuyers' allegations are true, SSA acted negligently, at best, by rehiring Speed after deeming him unsuitable for employment. However, because the Homebuyers did not own their homes at the time of the arsons and suffered only emotional injuries, Maryland law prevents their recovery against SSA. We therefore affirm the district court's decision to grant SSA's renewed motion for summary judgment as to the Homebuyers' negligence-based claims.

### III.

We turn now to the Homebuyers' arguments regarding the Maryland Security Guards Act. The Homebuyers premise their claim on section 19-501 of the Maryland Business Occupations and Professions Code, which provides that "[a] licensed security guard agency is responsible for the acts of each of its

employees while the employee is conducting the business of the agency." The Homebuyers and SSA disagree regarding the scope of this provision. The Homebuyers contend that the language "while the employee is conducting the business of the agency" indicates that the statute renders SSA strictly liable for any actions a security guard agency's employee takes while the employee is on duty. Under the Homebuyers' interpretation of the statute, SSA could be liable for Speed's and Fitzgerald's intentional torts and statutory violations. By contrast, SSA avers that the provision simply codifies common law respondeat superior principles, by which an employer is vicariously liable for its employee's behavior only if the employee commits the act in question while acting within the scope of his or her employment or "in furtherance of the employer's business and authorized by the employer." See Barclay v. Briscoe, 47 A.3d 560, 567-68 (Md. 2012) (quoting S. Mgmt. Corp. v. Taha, 836 A.2d 627, 638 (Md. 2003)) (internal quotation marks omitted). The district court agreed with SSA's interpretation of the statute. See Antonio, 701 F. Supp. 2d at 762-66.

Pursuant to Maryland law, "a court of the United States" may certify a question to the Court of Appeals of Maryland "if the answer may be determinative of an issue in pending litigation in the certifying court and there is no controlling appellate decision, constitutional provision, or statute of

13

[Maryland]." Md. Code Ann., Cts. & Jud. Proc. § 12-603. We review the district court's decision to deny the Homebuyers' request for certification for abuse of discretion. Nat'l Capital Naturists, Inc. v. Bd. of Supervisors of Accomack Cnty., 878 F.2d 128, 132 (4th Cir. 1989). However, even if we discern no abuse of discretion, we may certify the question to the Court of Appeals of Maryland ourselves. See Anderson v. United States, 669 F.3d 161 (4th Cir. 2012); Doe v. Pharmacia & Upjohn, Inc., 122 F. App'x 20 (4th Cir. 2005).

### A. Discussion of Maryland Law

To determine whether this question regarding section 19-501's import warrants certification to the Court of Appeals of Maryland, we first consider whether the provision's meaning "may be determinative of an issue in pending litigation." Md. Code Ann., Cts. & Jud. Proc. § 12-603. For the reasons we lay out in Part II of this Order, section 19-501 cannot render SSA liable for negligence. However, as the Homebuyers point out in their briefs, under their interpretation of section 19-501, "SSA [c]ould be directly liable . . . not only for actions taken within the scope of employment, but also for the intentional torts of its employees and for its employees' civil rights violations, without need to prove any additional negligence by SSA in its hiring, training or supervision." Notably, the

14

district court dismissed the Homebuyers' Fair Housing Act, 42 U.S.C. § 1982, 42 U.S.C. § 1985(3), tortious interference with contract, and intentional infliction of emotional distress claims against SSA because Speed was not acting within the scope of his employment when he prepared to execute the arsons. Antonio, 701 F. Supp. 2d at 773, 775. Under the Homebuyers' interpretation of section 19-501, SSA could be liable for these counts even though Speed exceeded the scope of his employment, indicating that section 19-501's meaning may be determinative of these issues.

Second, we evaluate whether we may ascertain section 19-501's scope based on a "controlling appellate decision, constitutional provision, or statute of [Maryland]." Md. Code Ann., Cts. & Jud. Proc. § 12-603. Maryland's courts have not interpreted the statute, so we look first to its plain meaning to determine whether we can deduce section 19-501's import without certifying a question. See Oaks v. Connors, 660 A.2d 423, 429 (Md. 1995) ("[I]f the words of the statute, construed according to their common and everyday meaning, are clear and unambiguous and express a plain meaning, we will give effect to the statute as it is written." (quoting Jones v. State, 647 A.2d 1204, 1206 (Md. 1994)) (internal quotation marks omitted)). The Homebuyers emphasize the statute's use of the word "while,"

15

contending that the inclusion of that word indicates that section 19-501 is

> best read to hold a licensed security guard agency responsible not only for an employee's acts in "conducting the business of the agency"—as understood in the common law doctrine of respondeat superior—but also for those additional acts that take place "at the same time that" the employee is doing so.

In essence, the Homebuyers argue that section 19-501's plain meaning renders security guard agencies liable for actions that their employees commit while on duty, regardless of whether the employee was furthering the employer's interests. SSA contends that the Homebuyers "overlook the common, everyday meaning of the phrase 'while . . . conducting the business of the agency,'" pointing out that employees cannot conduct their employers' business while they commit crimes. Accordingly, SSA argues that section 19-501's plain meaning is coextensive with respondeat superior. Because these interpretations are equally plausible, we cannot rely on section 19-501's plain meaning to interpret the statute.

"If the meaning of [a statute's] plain language is ambiguous or unclear, to discern legislative intent, [the court] look[s] to the legislative history, prior case law, the purposes upon which the statutory framework was based, and the statute as a whole." Bost v. State, 958 A.2d 356, 361 (Md. 2008). We first consider whether Maryland's case law can shed light on

16

section 19-501's meaning. In an "often-quoted" passage, the Court of Appeals of Maryland distinguished acts "done while prosecuting the master's business" from acts "done by the servant in furtherance thereof," implying that the former has a wider scope than the latter:

> The simple test [for determining whether an employer is vicariously liable for its employee's acts] is whether they were acts within the scope of his employment; not whether they were done while prosecuting the master's business, but whether they were done by the servant in furtherance thereof, and were such as may fairly be said to have been authorized by him.

See Sawyer v. Humphries, 587 A.2d 467, 470 (Md. 1991) (quoting Hopkins Chem. Co. v. Read Drug & Chem. Co. of Balt. City, 92 A. 478, 479-80 (Md. 1914)) (internal quotation marks omitted). The language "prosecuting the master's business," see id., is very similar to the phrase "conducting the business of the agency," Md. Code Ann., Bus. Occ. & Prof. § 19-501. This case law therefore suggests that the Homebuyers' position—that section 19-501 is a broad provision that can render a security guard agency liable even if its employee did not act within the scope of his or her employment—may be correct.

The Homebuyers also contend that the legislative history of the Maryland Private Detectives Act, Md. Code Ann., Bus. Occ. & Prof. § 13-601, supports their interpretation of section 19-501 because the Maryland Security Guards Act stemmed from the

17

Maryland Private Detectives Act. Econ. Matters Comm., Bill Analysis: H.B. 42, H.D. 410-42 (Md. 1996) ("House Bill 42 separates the current provisions of law governing the certification of security guards and the regulation of security guard services from the Maryland Private Detectives Act."). Section 13-601 contains the same language that is at issue in this case but applies to "private detective agenc[ies]" rather than "licensed security guard agenc[ies]." Compare Md. Code Ann., Bus. Occ. & Prof. § 13-601, with id. § 19-501.

When it passed the bill that enacted section 13-601 in 1986, the Maryland Senate declined to adopt a proposed amendment that replaced "while the employee is conducting the business of the agency" with "if the acts are within the scope of this subtitle." Senator Kelly & Md. Ass'n of Contract Guard Servs., Amendment to Senate Bill No. 968, S. 396-968 (Md. 1986). The amendment's stated purpose was "[c]larif[ying] that agencies are not liable for acts committed outside the scope of employment." Id. In other words, the amendment's drafters aimed to make section 13-601's language mirror the common law rule. The Senate gave no reason for its decision not to incorporate the proposed language into the bill.

The Homebuyers urge us to conclude that the Senate's decision not to adopt the proposed amendment supports its interpretation of section 19-501. However, because the Senate

18

did not explain the reasoning behind its choice, we cannot assume it rejected the amendment because it did not want to codify the common law rule. As SSA points out in its brief, it is just as likely that the Senate declined to incorporate the proposed amendment's language into the bill because it believed the existing language already codified respondeat superior. See Auto. Trade Ass'n of Md., Inc. v. Ins. Comm'r, 437 A.2d 199, 203 (Md. 1981) ("[T]he fact that a bill on a specific subject fails of passage in the General Assembly is a rather weak reed upon which to lean in ascertaining legislative intent."). We therefore cannot glean section 19-501's meaning from the Senate's decision not to adopt the amendment.

The Homebuyers also contend that the Senate's statements regarding section 13-601's purpose indicate that their interpretation of section 19-501 is correct. Senate Bill 968, which included the provision that ultimately became section 13-601, specified that, "for the most part, the proposals under the bill find their basis in actual law and practice and do not deviate substantially from the current law as it is now applied. There is no attempt under the revision to change existing policy." S. Econ. & Envtl. Affairs Comm., Summary of Committee Report, Senate Bill 968: Private Detectives, S. 396-968, at 2 (Md. 1986). The Senate also explained that it intended section 13-601 to "clarify[] provisions of Article 56, Section

19

81(a)(1)."   S. Econ. & Envtl. Affairs Comm., Bill Analysis, Senate Bill 968: Private Detectives, S. 396-968, at 7 (Md. 1986).   In 1985, immediately prior to the enactment of section 13-601, article 56, section 81(a)(1) provided that:

> The holder of any [private detective or security guard agency] license issued under the provisions of this subtitle may employ to assist him in his work and in the conduct of his business as many persons as he may deem necessary, and he shall at all times during such employment be accountable for the good conduct in the business of each and every person so employed.

Md. Code. Ann., Art. 56, § 81(a)(1) (Supp. 1985).   To determine whether the Senate's goal of clarifying this provision without altering its function elucidates the meaning of section 13-601 or section 19-501, we must construe section 81(a).

How section 81(a) worked in practice is far from clear. Maryland's courts never interpreted the provision, and other states' courts have reached differing conclusions when interpreting similar language from other statutes.   For example, in Borg-Warner Protective Services Corp. v. Superior Court, 89 Cal. Rptr. 2d 687 (Ct. App. 1999), the California Court of Appeal considered the meaning of a statute containing the following language:   "A licensee shall at all times be legally responsible for the good conduct in the business of each of his or her employees or agents, including his or her manager," id. at 689-90 (quoting Cal. Bus. & Prof. Code § 7582.15) (internal quotation marks omitted).   The court held that the statute

20

codified respondeat superior. Id. In Simmons, Inc. v. Pinkerton's, Inc., 762 F.2d 591, 595-98 (7th Cir. 1985), however, the Seventh Circuit construed a similar statute as rendering security guard agencies strictly liable for their employees' torts. Accordingly, the fact that the Maryland Senate intended section 13-601 "to clarify provisions of article 56, section 81(a)(1)" and not to "deviate substantially from the current law as it is now applied" sheds little light on the operation of section 19-501 because we cannot ascertain section 81(a)(1)'s meaning.

Finally, we note that, under Maryland law, "it is a long-standing rule of statutory interpretation that the common law will not be repealed by implication." Suter v. Stuckey, 935 A.2d 731, 743 (Md. 2007). Pursuant to this canon of construction,

> [t]he rules of the common law are not to be . . . overturned except by clear and unambiguous language. In order to hold that a statute has abrogated common law rights existing at the date of its enactment, it must clearly appear that they are repugnant to the act, or the part thereof invoked, that their survival would in effect deprive it of its efficacy and render its provisions nugatory.

Id. at 744 (quoting Lutz v. State, 172 A. 354, 356 (Md. 1934)) (internal quotation marks omitted). In other words, when the General Assembly is silent regarding whether a statute abrogates the common law, Maryland's courts interpret the statute in

21

conformity with the common law unless (1) "the provisions can[not] be given full effect without derogation from the common law" or (2) the "statute deals with an entire subject-matter," thereby "abrogating the common law as to that subject." Id. The General Assembly was silent regarding whether it intended section 19-501 to abrogate the common law, and neither of these exceptions apply in this case. This canon of construction therefore suggests that Maryland's courts would interpret section 19-501 in conformity with the common law.

The existing legal landscape in Maryland offers clues that support both the Homebuyers' and SSA's positions. As we explain above, Maryland precedent distinguishes acts "done while prosecuting the master's business" from acts "done by the servant in furtherance thereof," imposing liability only for the latter acts. Sawyer, 587 A.2d at 470. This language suggests that section 19-501—which renders security guard agencies liable for acts their employees commit "while the . . . conducting the business of the agency"—extends beyond the common law. However, pursuant to one of Maryland's canons of statutory construction, we should interpret section 19-501 in conformity with the common law because the General Assembly did not explicitly abrogate the common law when it enacted the statute. In light of these conflicting indicators of section 19-501's meaning and the fact that this issue may be determinative of the success of several

22

of the Homebuyers' claims, we decline to interpret the statute and seek the Court of Appeals of Maryland's guidance.[5]


## B. Certified Question

For the aforementioned reasons, we certify the following question to the Court of Appeals of Maryland:

> Does the Maryland Security Guards Act, Md. Code Ann., Bus. Occ. & Prof. § 19-501, impose liability beyond common law principles of respondeat superior such that an employer may be responsible for off-duty criminal acts of an employee if the employee planned any part of the off-duty criminal acts while he or she was on duty?

We acknowledge that the Court of Appeals of Maryland may reformulate the question. See Md. Code Ann., Cts. & Jud. Proc. § 12-604.


## C. Parties and their Counsel

Counsel of record for the Homebuyers is Ruthanne M. Deutsch, Akin Gump Strauss Hauer & Feld LLP, 1333 New Hampshire Avenue, N.W., Washington, D.C. 20036. Counsel of record for SSA are Gary A. Bryant, Joseph P. Moriarty, and J. David Crain, Willcox & Savage, P.C., 440 Monticello Avenue, Suite 2200, Norfolk, Virginia 23510, and Gerry H. Tostanoski, Tydings &

---

[5] Because we opt to certify the question ourselves, we do not reach the issue of whether the district court abused its discretion by declining to certify the question.

Rosenberg, L.L.P., 100 East Pratt Street, 26th Floor, Baltimore, Maryland 21202.

## IV.

For these reasons, we affirm the district court's decision to grant SSA's renewed motion for summary judgment as to the Homebuyers' negligence-based claims. We also hereby order that: (1) the above question be certified to the Court of Appeals of Maryland; (2) the Clerk of this Court forward this Order to the Court of Appeals of Maryland; and (3) the Clerk of this Court fulfill any requests by the Court of Appeals of Maryland for all or part of the record in this case.

<u>AFFIRMED IN PART AND
QUESTION CERTIFIED</u>