**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-1957**

POLY-MED, INC.,

    Plaintiff – Appellant,

  v.

NOVUS SCIENTIFIC PTE. LTD.; NOVUS SCIENTIFIC, INC.; NOVUS SCIENTIFIC AB,

    Defendants – Appellees.

Appeal from the United States District Court for the District of South Carolina, at Anderson. J. Michelle Childs, District Judge. (8:15-cv-01964-JMC)

Argued: October 27, 2020       Decided: January 5, 2021

Before KING, KEENAN, and HARRIS, Circuit Judges.

Question certified to the Supreme Court of South Carolina by unpublished order. Judge Harris directed entry of the order, with the concurrences of Judge King and Judge Keenan.

**ARGUED:** Stephen Lynwood Brown, YOUNG CLEMENT RIVERS, LLP, Charleston, South Carolina, for Appellant. Jennifer L. Mallory, NELSON MULLINS RILEY & SCARBOROUGH, LLP, Columbia, South Carolina, for Appellees. **ON BRIEF:** Russell G. Hines, YOUNG CLEMENT RIVERS, LLP, Charleston, South Carolina; Paul Peter Nicolai, Marwan S. Zubi, NICOLAI LAW GROUP, P.C., Springfield, Massachusetts, for Appellant. Mark C. Dukes, A. Mattison Bogan, Robert H. McWilliams, Jr., NELSON MULLINS RILEY & SCARBOROUGH, LLP, Columbia, South Carolina, for Appellees.

---

ORDER

---

PAMELA HARRIS, Circuit Judge:

Pursuant to Rule 244 of the South Carolina Appellate Court Rules, we respectfully certify the following question of law to the Supreme Court of South Carolina:

> Under a contract with continuing rights and obligations, does South Carolina law recognize the continuing breach theory in applying the statute of limitations to breach-of-contract claims, such that claims for separate breaches that occurred (or were only first discovered) within the statutory period are not time-barred, notwithstanding the prior occurrence and/or discovery of breaches as to which the statute of limitations has expired? Does it matter if the breaches are of the same character or type as the previous breaches now barred?

As we explain, we believe there is no controlling precedent answering this question in the decisions of the Supreme Court of South Carolina. Moreover, the answer to this question may be determinative of whether the defendants in this case were entitled to summary judgment on their defense that South Carolina's three-year statute of limitations for contract claims entirely barred the plaintiff's recovery on its breach-of-contract claims.

**I.**

**A.**

This appeal centers on a dispute over alleged violations of a contract between Poly-Med, Inc. and three entities – Novus Scientific Pte., Ltd.; Novus Scientific, Inc.; and Novus Scientific AB – which we refer to collectively as "Novus."

2

Poly-Med is a South Carolina company that designs, develops, and manufactures products and materials for medical, pharmaceutical, and biotechnology use, with a focus on bio-absorbable and biodegradable polymers. In June 2005, Poly-Med entered into a Sale of Materials and License Agreement (the "Agreement") with the predecessor in interest to Novus, a Swedish company called Radi Medical Systems AB. Under that Agreement, Poly-Med developed and manufactured a proprietary, absorbable surgical mesh for Radi's exclusive use in a new hernia-repair product. Radi developed that mesh into a medical device called TIGR® Matrix Surgical Mesh ("TIGR® Mesh"). In 2008, Radi transferred its rights under the Agreement to Novus, which applied for FDA clearance and, since 2014, has manufactured and sold TIGR® Mesh out of its own facilities.

This appeal centers on two ongoing obligations in the parties' Agreement. First, the Agreement provided that Radi – and now Novus – cannot "manufacture, deliver or sell," or cause others to manufacture for delivery or sale, its surgical mesh "except for use in . . . [its p]roducts for hernial repair." J.A. 83. We, like the district court, refer to this as the "hernia only" provision. Second, in what the district court referred to as the "patent application" provisions, the Agreement protected Poly-Med's intellectual property by giving it "all right, title and interest in and to any patent applications" regarding the proprietary mesh it developed, as well as the initial right to file patent applications to protect those interests. J.A. 84. The Agreement authorized Radi – and now Novus – to file or maintain patent applications if Poly-Med did not, but it required any applications be made in consultation with Poly-Med, and "in Poly-Med's name and on Poly-Med's behalf." J.A. 86.

3

**B.**

In part over disagreements about these provisions, the parties' relationship began to deteriorate, and on May 8, 2015, Poly-Med filed this suit against Novus in federal district court. Three days later, Poly-Med notified Novus that it believed Novus had materially breached the Agreement, and that it intended to invoke a contract provision allowing either party to terminate following an uncured material default. In its Second Amended Complaint – the operative pleading – Poly-Med brought claims for breach of contract, tortious interference with contract, and violations of the South Carolina Unfair Trade Practices Act. Among its breach-of-contract claims, Poly-Med alleged that Novus violated the Agreement's hernia-only provision by using, selling, and manufacturing TIGR® Mesh for applications beyond hernia repair, including for breast reconstruction procedures. Poly-Med also alleged that Novus violated the Agreement's patent-application provisions by filing, maintaining, and prosecuting patent applications in its own name; failing to inform and consult with Poly-Med about those applications; and asserting or assigning ownership rights over patents that properly belong to Poly-Med. Poly-Med asked for damages and injunctive relief, as well as an order declaring that the Agreement had been terminated.

The district court granted Novus's motion for partial summary judgment on the breach-of-contract claims, holding that they were barred by the statute of limitations. *See Poly-Med, Inc. v. Novus Sci. Pte. Ltd.*, No. 8:15-cv-01964-JMC, 2018 WL 1932551, at *7–9 (D.S.C. Apr. 24, 2018). The applicable South Carolina statute of limitations, the court explained, requires injured parties to file suit within three years of the date they knew or should have known that a contract claim exists. And it was clear from the summary

4

judgment record, the court found, that Poly-Med "should have known through the exercise of reasonable diligence," *id.* at *9, that it had some claims against Novus for breaches of the hernia-only and patent-application provisions by no later than the fall of 2010: As to the hernia-only claims, the court pointed to internal Poly-Med documents from September 2010 discussing the possibility that Novus was testing or promoting TIGR® Mesh for use beyond hernia repair; and as to the patent-application claims, the district court credited an October 2010 letter from Novus to Poly-Med listing several relevant patents among the intellectual property Novus acquired from Radi. Because Poly-Med was on notice of its claims by 2010, the court concluded, Poly-Med's 2015 suit appeared to fall outside the three-year statute of limitations.

That brought the district court to what it called the "crux" of its summary judgment determination: Poly-Med's argument that even if recovery on older breaches was barred by the limitations period, it still could recover for newer breaches that Novus committed, or that Poly-Med could only have discovered, within three years of filing suit. *Id.* at *7. As the court explained, that argument required it "to determine whether South Carolina in the breach-of-contract context recognizes the theory of 'continuing breach,' 'continuing wrong' or 'continuing accrual' . . . wherein each discrete event of alleged breach individually starts a new limitations period." *Id.* Recognizing that there were no "South Carolina appellate court decision[s] addressing th[is] precise question," the district court predicted, based on a review of relevant South Carolina authority, that the Supreme Court of South Carolina would not recognize the "continuing breach" theory in this context. *Id.* at *8–9.

5

The district court acknowledged some support for Poly-Med's position in the South Carolina Supreme Court's recent holding that the statute of limitations "begins to run anew with each violation" of the South Carolina Unfair Trade Practices Act ("SCUTPA"). *Id.* at *7 (quoting *State ex rel. Wilson v. Ortho-McNeil-Janssen Pharms., Inc.*, 777 S.E.2d 176, 200 (S.C. 2015)). But that holding, the district court reasoned, was "expressly limited" to the language and legislative intent of SCUTPA, so it said little about how state law would treat breach-of-contract claims. *Id.* And looking to other cases "discussing the continuing breach theory," the district court was "persuaded that[,] . . . because breach of contract claims in South Carolina are subject to the discovery rule" – which tolls the statute of limitations until claims reasonably can be discovered – they would not also be "subject to the continuing breach theory." *Id.* at *9.

Based on that conclusion, the court determined that Poly-Med's contract claims were time-barred and granted partial summary judgment to Novus on those claims. In a separate order, the district court dismissed Poly-Med's declaratory judgment action as well, because Poly-Med had "tied the fate" of that relief to its breach-of-contract claims. *See Poly-Med, Inc. v. Novus Sci. Pte. Ltd.*, No. 8:15-cv-01964-JMC, 2018 WL 4223443, at *4 (D.S.C. Aug. 27, 2018).

Following the district court's statute-of-limitations decision, Poly-Med moved either to certify the order for interlocutory appeal, or to certify the question whether South Carolina would recognize the continuing breach theory to the Supreme Court of South Carolina. The court denied both requests. *See Poly-Med, Inc. v. Novus Sci. Pte. Ltd.*, No. 8:15-cv-01964-JMC, 2018 WL 2431883, at *1 (D.S.C. May 30, 2018). The court then

6

resolved several additional claims and counterclaims not at issue on appeal, and the parties voluntarily dismissed any remaining ones.[1]

This timely appeal followed.

## II.

We review the district court's grant of summary judgment de novo, "applying the same legal standards as the district court and viewing all facts in the light most favorable to the nonmoving party." *W. C. English, Inc. v. Rummel, Klepper & Kahl, LLP*, 934 F.3d 398, 402–03 (4th Cir. 2019) (citation omitted). Under that standard, Novus was entitled to summary judgment if it demonstrated "that there [wa]s 'no genuine dispute as to any material fact' and that [it was] 'entitled to judgment as a matter of law.'" *Id.* at 403 (quoting Fed. R. Civ. P. 56(a)).

The parties agree, as do we, that the South Carolina statute of limitations for contract claims applies to this diversity suit. *See Gattis v. Chavez*, 413 F. Supp. 33, 35 (D.S.C. 1976) (noting that South Carolina follows "law of the forum" when applying statutes of limitations to contract actions). Under that statute of limitations, injured parties have three years to file suit. *See* S.C. Code Ann. § 15-3-530(1). Because South Carolina applies the

---

[1] The parties originally stipulated to dismissal of the remaining claims and counterclaims without prejudice, and the district court entered a final judgment to that effect. On initial appeal, a prior panel of this court held that the district court had "created a nonfinal split judgment" and concluded that it lacked jurisdiction over Poly-Med's appeal. *Poly-Med, Inc. v. Novus Sci. Pte. Ltd.*, 773 F. App'x 727, 727 (4th Cir. 2019) (Mem.). On remand, at the parties' request, the district court dismissed the remaining claims and counterclaims with prejudice and entered a new final judgment.

7

"discovery rule" to contract claims, *Prince v. Liberty Life Ins. Co.*, 700 S.E.2d 280, 282 (S.C. Ct. App. 2010), those three years "begin[] to run from the date the injured party either knows or should know, by the exercise of reasonable diligence, that a cause of action exists for the wrongful conduct," *True v. Monteith*, 489 S.E.2d 615, 616 (S.C. 1997).

In its appellate briefing, Poly-Med appeared to question the district court's application of the South Carolina discovery rule, and the court's holding that Poly-Med knew or should have known of its contract claims against Novus by 2010. At oral argument, however, Poly-Med clarified that it is challenging only the district court's rejection of the continuing breach theory. And in any event, we agree with the district court that viewed in the light most favorable to Poly-Med, as required in this summary-judgment posture, *see Poly-Med*, 2018 WL 1932551, at *5, the record establishes that Poly-Med was on notice of both the patent-application and the hernia-only contract claims against Novus by 2010, *see id.* at *6, *9.

In other words, whether any of Poly-Med's breach-of-contract claims survive the three-year statute of limitations turns on whether South Carolina recognizes the continuing breach theory advanced by Poly-Med. *See id.* at *7. As the district court explained, that theory applies when plaintiffs plead "a series of distinct events, each of which gives rise to a separate cause of action[.]" *Id.* (quoting 54 C.J.S. Limitations of Actions § 132 (2012)). In such cases, the "doctrine operates to save the later arising claims, even if the statute of limitations has lapsed for the earlier events." *Id.* (quoting 54 C.J.S. Limitations of Actions § 132 (2012)). As Poly-Med put it at oral argument, the continuing breach theory would allow it to recover for "fresh breaches" Novus committed within the statute of limitations

8

– notwithstanding the existence of similar "stale breaches" of the same contract provisions, for which it could not recover because they occurred more than three years before it filed suit. *See* Oral Arg. at 2:20–2:45.

It is important to distinguish this "continuing breach" theory from a related but distinct set of doctrines, under which a course of misconduct by a defendant is not divided into acts occurring inside and outside the limitations period, but is instead aggregated into "one single violation that, taken as a whole, satisfies the applicable statute of limitations." *See Hamer v. City of Trinidad*, 924 F.3d 1093, 1100 (10th Cir. 2019).[2] Under those doctrines, the statute of limitations is effectively tolled, so that the plaintiff has a cause of action for *any* damages suffered from the start of the misconduct until the end. *See White v. Mercury Marine, Div. of Brunswick, Inc.*, 129 F.3d 1428, 1430 (11th Cir. 1997) (describing distinctions between theories). Under the continuing breach theory relied on by Poly-Med, by contrast, Poly-Med could recover "for only that part of the injury . . . suffered during the limitations period; recovery for the part of the injury suffered outside the limitations period . . . [would] remain[] unavailable." *Hamer*, 924 F.3d at 1100 (internal quotation marks omitted).

That distinction matters to our evaluation of whether the South Carolina Supreme Court would recognize the continuing breach theory. As the district court correctly noted, South Carolina courts have declined to adopt certain "continuing wrong" theories in several

---

[2] These two related approaches are sometimes grouped under the umbrella of the "continuing violation doctrine" – with the former labeled as the "modified" version of the theory and the latter as the "pure" version. *See id.* at 1100 nn.3 & 4.

contexts. *See Poly-Med, Inc.*, 2018 WL 1932551, at \*9. But in those cases, the courts rejected the "aggregation" doctrine described above, refusing to toll applicable statutes of limitations to rescue claims arising out of old conduct. *See, e.g.*, *Dillon Cnty. Sch. Dist. No. Two v. Lewis Sheet Metal Works, Inc.*, 332 S.E.2d 555, 560 (S.C. Ct. App. 1985) (rejecting continuous treatment rule that would "toll[] the statute of limitations" for negligence claims), *overruled on other grounds by Atlas Food Sys. & Servs., Inc. v. Crane Nat'l Vendors Div. of Unidynamics Corp.*, 462 S.E.2d 858 (S.C. 1995); *Epstein v. Brown*, 610 S.E.2d 816, 818–20 (S.C. 2005) (rejecting continuous representation rule, which would toll the statute of limitations for legal malpractice claims until the end of the representation on the matter), *overruled on other grounds by Stokes-Craven Holding Corp. v. Robinson*, 787 S.E.2d 485 (S.C. 2016); *Harrison v. Bevilacqua*, 580 S.E.2d 109, 114 (S.C. 2003) (rejecting continuous treatment rule that would begin the clock running for patient's professional negligence claims only when treatment concludes).

By contrast, in recent years the Supreme Court of South Carolina has endorsed two "continuing wrong" doctrines that are more analogous to Poly-Med's continuing breach theory. First, in *State ex rel. Wilson v. Ortho-McNeil-Janssen Pharmaceuticals, Inc.*, the court held that a similar theory applied to the statute of limitations for SCUTPA, such that a separate "statute of limitations begins to run anew with each violation." 777 S.E.2d at 200. As the court explained, "[w]hen an obligation or liability arises on a recurring basis, a cause of action accrues each time a wrongful act occurs, triggering a new limitations period." *Id.* (quoting *Aryeh v. Canon Bus. Sols., Inc.*, 292 P.3d 871, 880 (Cal. 2013)). In support of that seemingly broad statement, however, the Supreme Court of South Carolina

10

relied on SCUPTA's text and purpose, limiting its holding to that statutory context. *Id.* By itself, then – and as the district court concluded – *Wilson* cannot establish that the Supreme Court of South Carolina would extend the same theory to Poly-Med's breach-of-contract claims.

But since the district court's ruling, the Supreme Court of South Carolina has recognized a similar theory in a second context. In *Marshall v. Dodds*, 827 S.E.2d 570 (S.C. 2019), the court held that each act of negligence during a course of treatment triggered a separate six-year statute of repose for medical malpractice claims. *See id.* at 576–77. As a result, patients could recover for later negligent acts that fell within the limitations period, even as similar, earlier acts were time-barred. *See id.* In support of its holding, the court cited *Wilson* for the principle that "fixing the deadlines on the date of the first instance of misconduct when there is repeated wrongdoing would allow 'parties engaged in long standing malfeasance . . . [to] obtain immunity in perpetuity from suit even for recent and ongoing malfeasance.'" *Id.* at 576 (quoting *Wilson*, 777 S.E.2d at 199–200).

So as of now, it is clear, at a minimum, that the Supreme Court of South Carolina's endorsement of the continuing violation doctrine is not limited to the SCUTPA context, and will extend at least to some other contexts as well. At the same time, however, it remains the case that the Supreme Court of South Carolina has yet to apply the continuing violation theory to a breach-of-contract claim. Nor has that Court had a chance to consider how the continuing violation theory might operate differently in different contracts cases – whether it would matter, for instance, how significant the alleged breaches were, or if recent alleged breaches, inside the limitations period, were of the same character or type as

11

previous breaches now time-barred. *See* 10 Corbin on Contracts § 53.14 (2020) (discussing partial and material breaches).

Given the developments in the law surrounding continuing violations and the current state of that law, we conclude that existing authority cannot definitively answer whether South Carolina would recognize the continuing violation theory advanced by Poly-Med in this breach-of-contract case. We believe that question presents a sufficiently debatable issue to warrant certification to the Supreme Court of South Carolina.[3]

## III.

Based on the foregoing, we respectfully request that the Supreme Court of South Carolina accept and answer the foregoing certified question, thereby providing the parties, the courts, future litigants, and the public with definitive guidance regarding the applicability of the continuing breach theory under South Carolina law. We direct the Clerk of Court to forward a copy of this order under official seal to the Supreme Court of South Carolina.

This order is entered at the direction of Judge Harris with the concurrence of Judge King and Judge Keenan.

---

[3] It does not follow from our decision to certify that the district court abused its discretion when it declined to do the same. Our decision rests significantly on the Supreme Court of South Carolina's very recent decision in *Marshall*, which the district court did not have before it. With the benefit of that decision, we "certify the question . . . ourselves," even though we "discern no abuse of discretion" in the district court's failure to do so. *Antonio v. SSA Sec., Inc*., 749 F.3d 227, 234 (4th Cir. 2014).

*QUESTION CERTIFIED*

FOR THE COURT

  Pamela A. Harris  
Circuit Judge